COMMERCIAL WHARF EAST CONDOMINIUM ASSOCIATION *vs.*
WATERFRONT PARKING CORP. & others.[1]

Suffolk. February 6, 1992. - March 23, 1992.

Present: LIACOS. C J.. WILKINS. NOLAN. LYNCH. & GREANEY. JJ.

*Real Property*, Condominium. *Condominiums*, Common area, Master
deed. *Easement*. *Damages*, Breach of contract.

In a proceeding by a condominium association seeking an adjudication of
the validity of vehicular parking rights retained by the condominium
developer, a judge of the Land Court, after rescript of this court, cor-
rectly ordered judgments determining that various activities of the de-
veloper's successors in title had exceeded the scope of the retained
rights, and ordering that the unauthorized practices cease. [313-315]

In a proceeding by a condominium association against the condominium
developer's successors in title, after the judge determined that the de-
fendants, by their security management of a vehicular parking area,
had exceeded the scope of parking rights retained in a recorded "Decla-
ration of Covenants and Easements," the association was entitled to re-
cover damages in the full amount it had to expend in order to receive
the security services to which it was entitled. [315-317]

CIVIL ACTION commenced in the Land Court Department
on July 16, 1985.

After review by this court reported in 407 Mass. 123
(1990), further proceedings were had before *Marilyn M.
Sullivan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*John B. Flemming* (*Frank C. Corso* with him) for Water-
front Park Limited Partnership.

---

[1]The Watermark Co., Inc., as general partners of the Waterfront Park
Limited Partnership, and The Watermark-Atlantic Co. and USB Atlantic
Associates - 85, Inc., as general partners of One Hundred Atlantic Avenue
Limited Partnership.

*Raymond J. Brassard* for One Hundred Atlantic Avenue Limited Partnership.

*Victor H. Polk, Jr.*, for the plaintiff.

NOLAN, J. The defendants, Waterfront Parking Corp. and The Watermark Co., Inc., as general partners of Waterfront Park Limited Partnership (Waterfront), and The Watermark-Atlantic Co. and USB Atlantic Associates - 85, Inc., as general partners of One Hundred Atlantic Avenue Limited Partnership (Atlantic), appeal from three related judgments entered by a Land Court judge after remand from this court. *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123 (1990) (*Commercial Wharf I*). The defendants argue that the Land Court judgments exceed the provisions for remand, and that the Land Court judge erred in the order of damages for the plaintiff. We transferred the case to this court on our own motion. We affirm·the judgments.

We briefly set out the facts of this case, which are more extensively presented in *Commercial Wharf I, supra* at 125-128. In 1967, Blue Water Trust (BWT) purchased land in Boston, now known as Commercial Wharf, and rehabilitated the granite block warehouse situated in the center of the wharf. In 1978, BWT decided to convert the building into condominium units and, in order to comply with applicable zoning requirements, it conveyed the granite building and a portion of the parking area to the condominium trust.

Immediately prior to recording the condominium master deed, which covers the granite building and the portion of the wharf known as the "parking and driveway area," BWT recorded a document entitled "Commercial Wharf East Condominium — Declaration of Covenants and Easements" (Declaration). The Declaration purports to retain certain rights with respect to the parking area deeded to the condominium, for the benefit of the owner of the retained land on Commercial Wharf. The Declaration recites that the owner of the land retains the right "to control and collect fees for the parking of vehicles in such area," and further states that the owner of this dominant estate "shall maintain and man-

age the said Parking and Driveway area in the same condition as said land is in on the date hereof." The condominium master deed recites that it is subject to the terms of the Declaration.

BWT sold the condominium units and managed the entire parking and driveway area from 1978 to 1984. In 1984, BWT began to sell its remaining interests on Commercial Wharf. In 1985, BWT conveyed several lots to Waterfront, along with the right to control, and to collect fees in, the parking and driveway area. In 1986, BWT conveyed a lot to Atlantic, which now maintains Cherrystones Restaurant (Cherrystones) on the property, along with licenses to eleven parking spaces.

After purchasing the parking rights, Waterfront instituted a number of changes. Waterfront established hourly and daily parking rates payable at a guard booth, eliminating BWT's prior practice of accepting only monthly parking fees. Waterfront also entered into an agreement with Cherrystones, allowing Cherrystones to offer valet parking for up to forty vehicles, an amount far beyond Atlantic's deeded rights to eleven parking spaces. Waterfront ceased BWT's practice of having uniformed security guards who patrolled the wharf, and provided different forms of security.

As a result of Waterfront's security changes, the Commercial Wharf East Condominium Association (Association) had to hire a private agency to provide a uniformed security guard for nighttime surveillance. In July, 1985, the Association commenced this action alleging, inter alia, that BWT could not reserve perpetual rights to manage parking on Commercial Wharf, and that those retained rights could not be conveyed to the subsequent purchaser, Waterfront. The Association further charged that Waterfront overburdened the easement it held under the Declaration by materially changing the parking area management without the Association's approval.

In October, 1988, the Land Court judge issued a memorandum decision and judgment which found, inter alia, that Waterfront had departed materially from BWT's prior prac-

tices and thereby exceeded the privileges to which they were entitled under the easement retained by BWT in the Declaration. This court granted the plaintiff's application for direct appellate review, and we issued our decision on March 26, 1990. *Commercial Wharf I*, 407 Mass. 123 (1990).

In *Commercial Wharf I*, we upheld the validity of the easement and its conveyance, and affirmed the judge's ruling that Waterfront had no authority under its retained rights to make material changes in the parking use and management, absent prior approval by the Association. We agreed with the judge that the changes instituted by Waterfront and Atlantic were "material" and exceeded their retained rights. *Id.* at 138-139. In so holding, we pointed to several specific material changes identified by the judge, including the change in security and the valet parking for Cherrystones. We affirmed the judge's decision and remanded the action to the Land Court solely for modification of the judgment to conform to our opinion. *Id.* at 139.

On remand, the judge entered a judgment after rescript, ruling that "any major changes in operation require the approval not to be unreasonably withheld of the fee owner of the condominium premises," and holding that several of Waterfront's practices, including the changes in security, the cash payments at the guard booth, and the additional parking granted to Atlantic, were major changes for which such approval had not been obtained. The judge ordered that the changes instituted by Waterfront be eliminated, and that the practices of the developer, BWT, be reinstituted no later than August 15, 1990. After Waterfront filed a motion to extend the date for compliance, the judge entered a supplemental judgment after rescript, granting Waterfront's motion in part, and ordering, inter alia, that the plaintiff and the defendants agree as soon as possible on a reasonable method for periodically ascertaining the identity of those parties using any of the deeded parking spaces.

After a trial to determine the damages resulting from the unauthorized land use, the judge entered a decision and judgment ordering Waterfront to pay the Association

$124,285.61, together with $36,449.71 in prejudgment interest, as compensation for the expenses incurred by the Association in hiring a security guard to perform evening rounds of the condominium property.

Waterfront contends on appeal that the judge misconstrued this court's opinion in *Commercial Wharf I, supra,* and erroneously ordered Waterfront to restore BWT's previous parking policies. Waterfront also challenges the award of damages to the plaintiff, as well as the judge's mandate that the parties agree to a reasonable method of determining periodically who is using the various parking spaces. Atlantic joins Waterfront's appeal solely on the issue of the judge's decision to limit Atlantic's use of parking spaces to the eleven deeded to it.

1. *Challenge to the judgments after rescript.* Waterfront reads our opinion in *Commercial Wharf I* as holding that the various changes instituted by Waterfront, taken collectively, constituted a material change in the use of the parking rights easement. Waterfront argues that the judge misconstrued our decision and erroneously ruled that each and every change adopted by Waterfront was material and therefore must be eliminated. Waterfront asserts that this court implicitly rejected, as nonmaterial, changes previously identified by the judge as substantial, such as the change from monthly parking payments to hourly and daily rates, because we did not specifically discuss these changes in our decision. Further, Waterfront contests the validity of the judge's order that Waterfront reinstitute the parking management practices of BWT, arguing that the judge has no authority to direct the operation of the parking area. Waterfront's arguments are without merit. The Land Court's judgments are completely faithful to our decision in *Commercial Wharf I, supra.*

We have stated previously our agreement with the Land Court judge "that the substantial changes instituted by Waterfront and Atlantic exceeded the privileges to which they were entitled under the easement retained by the developer." *Commercial Wharf I, supra* at 139. In this regard, we noted

certain parking area management changes made by Waterfront, such as the redirection of the flow of traffic, the replacement of uniformed security guards who performed night rounds with other forms of security, the installation of a guard booth, the change in the guest parking system, and the granting of twenty-nine parking spaces to Cherrystones Restaurant. We affirmed the Land Court judge's ruling that the parking management changes were material, based on our reading of the "strict requirement in the Declaration that the parking be managed in the same condition 'as said land is in on the date [of the Declaration].' " *Id.* This requirement, we noted, placed a "clear limitation on the grant of the power to control and manage parking on the condominium's land." *Commercial Wharf I, supra* at 138. We concluded that, under the terms of the grant, Waterfront had no authority to make material changes in the operation of the parking and driveway area without first consulting with and receiving the approval of the Association. *Id.* at 138-139.

Contrary to Waterfront's assertion, we did not consider in our opinion whether each and every change made to the parking management constituted a material departure from the prior arrangement. Although we delineated a number of changes which we agreed were material in light of the prior arrangement, our decision primarily focused on the issue of the scope of the privilege granted by the easement. We held that "the wording of the Declaration prevents any *material* change in the use of the retained rights from the conditions existing in 1978" (emphasis in original). *Id.* at 138. We decided that this limitation on the easement imposed a duty on the landowner to seek the approval of the Association before undertaking to alter the parking management scheme. With this understanding in mind, we affirmed the judge's determination that certain implemented changes did affect the prior parking management scheme and thus were invalid for lack of the Association's approval.

In accordance with our opinion, the judge, on remand, determined that additional changes to the parking area were significant, material changes which substantially altered the

parking management existing at the time of the Declaration. Approval for such changes, the judge concluded, was required, but not obtained. On this basis, the judge ordered that Waterfront cease its unauthorized management practices. There is no error in this ruling.

Waterfront and Atlantic seem to argue that the judge improperly considered the merits of particular changes made by Waterfront, concluded that they fell below the standards set by BWT's management methods, and erroneously ordered them eliminated. The judge's direction to restore the parking management practices of BWT, however, did not constitute a determination as to how the parking lot area could best be managed, nor was it a finding that each and every change implemented by Waterfront was unreasonable. Similarly, there is no suggestion in the judge's ruling that any grant of parking spaces to Cherrystones beyond the eleven deeded spaces is unreasonable. Rather, the ruling reflects a reasonable judgment that the relationship of the parties hereto must be reestablished at the point where all rights and responsibilities were understood and agreed to according to the Declaration. From this position, the parties will be free to negotiate in good faith as to any changes to the parking management system contemplated by the Declaration. Changes, even material ones, are not precluded by the judgments or, indeed, the Declaration. Waterfront simply shall seek approval from the Association for any major change to the parking management, which approval shall not be unreasonably withheld. Since their relationship requires cooperation and mutual assent, the judge did not exceed her authority in directing the parties to agree to a reasonable method of tracking the use of the parking spaces.

2. *Damages.* After finding that Waterfront violated the terms of the Declaration by failing to seek the Association's approval before materially altering the security management of the parking area, the judge conducted a trial to determine the damages sustained by the Association as a result of having to obtain its own uniformed security guard to conduct rounds on the wharf. The judge concluded that the Associa-

tion was entitled to recover its "out of pocket" expenses in this regard and awarded the Association $124,285.61, the amount it paid to hire a uniformed security guard for five years.

Waterfront argues that the judge erroneously determined the measure of damages in this case, since there was no evidence that the security provided by Waterfront was inferior to the security provided by BWT at the time of the Declaration. According to Waterfront, the evidence does not establish that it violated its obligation to the Association to provide reasonable security at reasonable hours, so it cannot be held liable to the Association. Waterfront further argues that the effect of the judge's ruling is to write into the Declaration a provision stating that Waterfront must do exactly what BWT did with respect to security. Moreover, Waterfront contends that the Association paid an unreasonable amount of money for substandard security services, so Waterfront should not be required to pay the excessive amount ordered. Lastly, Waterfront argues that, assuming it is obligated to reimburse the Association any amount at all, such amount is too speculative and, therefore, an award of damages is unwarranted. We do not agree with Waterfront's arguments.

The judge correctly determined that the Association is entitled to receive reimbursement for the expenses it incurred as a result of having to supply its own uniformed security. The judge found that Waterfront understood from the beginning of the relationship that the Association was insisting upon a uniformed attendant to make rounds. The judge further ruled that, by insisting that it was not required to provide this service, Waterfront assumed the risk that it ultimately would have to reimburse the Association for the cost of providing security. The Association is entitled to be placed in the same position it would have been in had Waterfront honored its obligation under the Declaration. See *Snelling* v. *Dine*, 270 Mass. 501, 506 (1930). We affirm the judgment awarding the Association reimbursement of the full amount

it had to expend in order to receive the security services it was entitled to receive.

*Judgments affirmed.*