## ROBERT C. DAY *vs.* GREGORY KERKORIAN.

No. 01-P-1450.

Worcester. February 5, 2004. - September 10, 2004.

Present: COWIN, BROWN, & GREEN, JJ.

*Res Judicata. Judgment,* Preclusive effect.

In an action for tortious interference with contractual relations and violation of
G. L. c. 93A, brought by the beneficiary of a disability insurance policy
against the agent who sold the policy, the judge erred in dismissing the
claims on the ground of issue preclusion, where the relevant issue of the
agent's liability under G. L. c. 93A had not been actually litigated and
determined in a prior proceeding between the beneficiary and the insurer
[808-811]; moreover, the doctrine of claim preclusion did not operate to
bar the beneficiary's claims against the agent, where the agent was not a
party in the prior proceeding; where the beneficiary, as the defendant in the
prior proceeding, was not required to implead the agent as a third party;
and where the agent could not be treated as a privy of the insurer in the
prior proceeding [811-813].

CIVIL ACTION commenced in the Superior Court Department on
February 2, 2001.

A motion to dismiss was heard by *John S. McCann,* J.

*Christopher E. Mullady* for the plaintiff.

*Robert T. Gill* for the defendant.

COWIN, J. The plaintiff, the beneficiary of a disability insur-
ance policy issued by a predecessor of Massachusetts Mutual
Life Insurance Company (insurer), prevailed in a prior proceed-
ing *(Day I)* in the Superior Court on the insurer's prayer for a
declaratory judgment as to whether benefits were due under the
policy. The plaintiff failed to recover in that case both on his
counterclaim for breach of contract against the insurer and on
his counterclaim that the insurer had committed unfair acts or
practices in violation of G. L. c. 93A. Subsequently, the plaintiff
commenced the present action *(Day II)* in the Superior Court

wherein he asserts claims against the defendant Gregory Kerkorian, the agent who had sold him the policy in question, for tortious interference with contractual relations and violation of G. L. c. 93A.[1] A judge dismissed the claims against Kerkorian on the ground of issue preclusion, and the plaintiff appealed. Because we conclude that the issues underlying the plaintiff's present tortious interference and G. L. c. 93A claims against Kerkorian were not adjudicated in *Day I*, see *Alba* v. *Raytheon Co.*, 441 Mass. 836, 841-842 (2004), we reverse.

1. *Background.* We inquire into the underlying events, as well as the proceedings in *Day I*, to determine whether, under prevailing principles, the judge was justified in declining to permit the plaintiff to press his claims in the present case. It is agreed that the plaintiff, a chiropractor, first acquired disability coverage through Kerkorian, then an agent of Connecticut Mutual Life Insurance Company (Connecticut Mutual), in 1987.[2] In 1992, the plaintiff, using a different agent, purchased another disability policy from New York Life Insurance Company (New York Life). In 1995, the plaintiff wanted to replace the 1992 New York Life policy, and sought out Kerkorian to acquire new coverage for him. Kerkorian obtained a new disability policy from Connecticut Mutual, and assisted the plaintiff with the process of completing the required application. It was a requirement of Connecticut Mutual at the time that the 1995 policy would be effective only on the condition that the 1992 New York Life policy be canceled within a specified period. The parties dispute whether Kerkorian made this known to the plaintiff at the time that the plaintiff signed the application (Kerkorian's position), or whether Kerkorian added a reference to the requirement to the application after its execution by the plaintiff and without the plaintiff's knowledge (the plaintiff's position).

The 1995 policy was issued on December 15, 1995. The parties dispute whether Kerkorian delivered the policy to the plaintiff or retained it in his own files. In either event, an unsigned "amendment to pending application" attached to the

---

[1]The plaintiff asserted claims in the second action against the insurer as well, but those claims, which were dismissed, do not figure in this appeal.

[2]Connecticut Mutual subsequently merged with Massachusetts Mutual Life Insurance Company.

policy stated: "Coverage with New York Life will be permanently discontinued effective within 60 days from the issue date of this policy." Subsequently, well after a period of sixty days from the policy's issuance had expired, Connecticut Mutual brought to Kerkorian's attention the fact that the amendment had not been signed by the insured; Kerkorian forwarded a copy to the plaintiff, and the plaintiff signed the copy without reading it.

While the parties dispute who was responsible for canceling the New York Life policy, they agree that the policy was in fact never canceled. Premiums thereon continued to be paid by means of automatic withdrawals from the plaintiff's office checking account. The plaintiff also continued to pay, and the insurer accepted, premiums on the 1995 policy. Those premiums were also paid by means of automatic withdrawals from the plaintiff's business account. On or about December 14, 1996, the plaintiff suffered a series of strokes that rendered him totally and permanently disabled. Asserting that cancellation of the New York Life policy was a condition precedent to recovery under the 1995 policy, the insurer refused to make any payment on the plaintiff's disability claim,[3] instead commencing *Day I* by means of a complaint for declaratory judgment.[4]

As indicated, in *Day I*, the plaintiff counterclaimed against the insurer, seeking a declaration that he was entitled to benefits under the 1995 policy, as well as damages for breach of contract and violation of G. L. c. 93A. He did not attempt to join Kerkorian (the defendant in the present proceeding) as a party. With respect to the c. 93A allegations set forth in his first amended answer and counterclaim, the plaintiff asserted that "MassMutual's acts and conduct as described above constitute violations of G. L. c. 176D, §§ (9)(*a*), (9)(*b*), (9)(*c*) and (9)(*f*),[5] and constitute unfair or deceptive acts or practices under G. L.

---

[3]The plaintiff did receive benefits under both the New York Life policy and the earlier Connecticut Mutual policy.

[4]Despite its denial of coverage, and despite a provision of the policy that relieved the plaintiff of further premium payments once he was disabled, the insurer continued to make automatic withdrawals from the plaintiff's business account.

[5]The references were presumably intended to be to G. L. c. 176D, § 3(9)(*a*)-(*c*), (*f*).

c. 93A." The counterclaim stated further: "More specifically, MassMutual violated G. L. c. 176D, §§ (9)(*a*) and (9)(*f*) when it (i) falsely alleged that Kerkorian did not take responsibility for cancelling the New York Life policy and that it did not know that the New York Life policy remained in effect during the year that it accepted Day's premiums without objection, and (ii) used those false allegations to deny its obligation to pay Day the benefits due him under policy number 6013853 . . . . MassMutual violated G. L. c. 176D, §§ (9)(*b*) and (9)(*c*) when it knowingly converted money from Day's business checking account."

Following a nonjury trial, a Superior Court judge found in part that the provision requiring cancellation of the New York Life policy was not a part of the original application signed by the plaintiff, and had not been brought to the plaintiff's attention at that time. Rather, the provision in question was added thereafter. In addition, the judge found that Kerkorian did not deliver the policy to the plaintiff, but instead retained it in his own files. The judge refused to credit Kerkorian's testimony that he had instructed the plaintiff to cancel the earlier policy either by calling New York Life himself, or by discontinuing premium payments, and found instead that the plaintiff assumed that that policy would be canceled by Kerkorian (given that the plaintiff had contacted Kerkorian for the specific purpose of replacing the New York Life coverage). The judge found further that, following his receipt of a letter from New York Life in January, 1996, regarding that policy, the plaintiff inquired of Kerkorian's office whether the policy had in fact been canceled and was told that "he was all set." Accordingly, the plaintiff assumed that subsequent correspondence from New York Life was "junk mail," and discarded it without looking at the contents.

On the basis of those findings, the judge in *Day I* concluded that the failure to cancel the New York Life policy did not relieve the insurer of its obligations under the 1995 policy. He ruled further that because the insured would recover under the 1995 policy, he had incurred no contract damages, and consequently could not prevail on his breach of contract claim. With respect to the allegations of the counterclaim under G. L.

c. 93A, the judge addressed only the provisions of G. L. c. 175, § 181; G. L. c. 176D, § 3(1)(*f*); and 211 Code Mass. Regs. § 42.23 (1986). Those provisions relate essentially to misrepresentations "for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion, or surrender of any insurance policy." G. L. c. 176D, § 3(1)(*f*). While not specifically pleaded in the counterclaim, the issue was apparently dealt with at trial, and the judge, finding that the insurer had not induced the plaintiff to replace the New York Life policy with the 1995 Connecticut Mutual policy, determined that "Kerkorian's actions do not rise to the level of a violation of chapter 93A." The judge did not address the plaintiff's contention that the insurer's effort to avoid coverage based on failure to cancel the New York Life policy, or its continued withdrawal of amounts from the plaintiff's business account, were c. 93A violations.

Both parties in *Day I* appealed. With the cross appeals pending, the plaintiff instituted the present action (*Day II*), alleging tortious interference with a contractual relationship and c. 93A violations on the part of the agent Kerkorian, and breach of contract and c. 93A violations on the part of the insurer. Subsequently, the plaintiff settled with the insurer, agreeing to accept a discounted amount of benefits under the 1995 policy. Pursuant to the settlement agreement, the cross appeals from the Superior Court judgment in *Day I* were dismissed. The plaintiff's present appeal from the Superior Court judgment in *Day II* survives, but against the defendant Kerkorian only.

2. *Discussion.* We understand the temptation experienced both by Kerkorian and the judge in *Day II* to attempt to dispose of this already extensively litigated dispute on the basis of some form of res judicata. However, principles of issue preclusion, the theory chosen by the judge to dismiss the plaintiff's claims against Kerkorian as agent, cannot be applied here given what was, and was not, actually decided in *Day I*. Nor is claim preclusion, an alternative theory pressed by Kerkorian, available.

"The doctrine of issue preclusion prevents relitigation of an issue determined in an earlier action when the same issue arises in a later action, based on a different claim, between the same parties or their privies, and the determination was essential to

the decision in the earlier action." *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 639 (1998). Issue preclusion, as most recently articulated, provides that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Alba* v. *Raytheon Co.*, 441 Mass. at 841, quoting from *Fireside Motors, Inc.* v. *Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 372 (1985). See Restatement (Second) of Judgments § 27 (1982).

While the application of issue preclusion requires a showing of various factors, the one significantly missing in the present circumstances is an actual determination in *Day I* of the issues on which preclusion is sought in *Day II*. "To defend successfully on the ground of issue preclusion, the defendant must establish that the issue of fact sought to be foreclosed actually was litigated and determined in a prior action between the parties or their privies . . . ." *Heacock* v. *Heacock*, 402 Mass. 21, 25 (1988). The party invoking the doctrine of issue preclusion has the burden of demonstrating that the doctrine applies, and must therefore show that "the issue of fact . . . actually was litigated and determined in [that party's] favor in the prior proceeding." *Commonwealth* v. *Bunting*, 401 Mass. 687, 691 (1988). Where an issue has not been adjudicated, "that aspect of the law of prior adjudication referred to as 'issue preclusion' is inapplicable." *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 251 (1980). Issue preclusion is not available where there is "ambiguity concerning the issues, the basis of decision, and what was deliberately left open by the judge." *Kirker* v. *Board of Appeals of Raynham*, 33 Mass. App. Ct. 111, 113 (1992).

The essence of Kerkorian's case for issue preclusion is that the judge in *Day I* found against the plaintiff on that portion of his counterclaim against the insurer that alleged violations of G. L. c. 93A. From that determination, Kerkorian reasons that the plaintiff's c. 93A claims against him as the insurer's agent (the defendant in *Day II*) have already been adjudicated, and further that the plaintiff's claim for tortious interference by Kerkorian is also precluded because the c. 93A finding in *Day I*

means that the plaintiff cannot establish the element of improper motive or means on the part of Kerkorian that is essential to that claim. See *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 397 (1996). The problem with Kerkorian's proposition is that the judge in *Day I* did not make the determinations on which Kerkorian's theory depends.

The judge actually adjudicated only a single claim arising under G. L. c. 93A, specifically, that the insurer, through its agent Kerkorian, had not violated the law against inducing the sale, cancellation, or substitution of insurance policies by means of misrepresentations. See G. L. c. 175, § 181; G. L. c. 176D, § 3(1)(*f*); and 211 Code Mass. Regs. § 42.23 (1986). On this allegation, he did indeed find in favor of the agent (because it was the actions of the agent on which the claim against the insurer was predicated). But this determination cannot serve, for purposes of issue preclusion, as a broad adjudication of other c. 93A claims on which the judge rendered no decision.

We consider particularly important in this regard the plaintiff's allegations in *Day I* that Kerkorian added to the application the requirement that the New York Life policy be canceled; he neither informed the plaintiff of the condition nor delivered a copy of the policy and application so that the plaintiff could see the requirement for himself; he falsely led the plaintiff to believe that the earlier policy had in fact been canceled as required; and these actions and omissions brought about the insurer's attempt to disclaim coverage. While these allegations were set forth in the counterclaim, were addressed at trial, and were the subject of findings by the judge, they did not generate a decision whether the insurer was, or was not, liable therefor under G. L. c. 93A. Basically, the judge employed these findings to remove the failure to cancel the New York Life policy as a defense to the insurer's obligation under the 1995 policy, and then made no determination whether the findings made a c. 93A case against the insurer.[6] Thus, with respect to allegations against Kerkorian that might have reflected allegations subsequently made in *Day II*, no decision took place that might thereafter have preclusive effect.

---

[6]The judge also rendered no decision on the plaintiff's claim that the insurer's continued withdrawal of amounts from the plaintiff's office account to pay premiums due on the 1995 policy violated G. L. c. 93A.

It should also be noted that in addressing the allegations against Kerkorian as agent in *Day I*, the judge made findings adverse to him in nearly every respect. Thus, rather than deciding in Kerkorian's favor in a manner which would estop a reiteration of the plaintiff's allegations in a subsequent action, the judge made findings that were consistent with the plaintiff's claim, but did not proceed to a conclusion that those findings entitled the plaintiff to c. 93A relief on the theory pressed in the prior action. It would be a strange logic, and a perverse application of the doctrine of issue preclusion, that would, in these circumstances, transform factual findings in the plaintiff's favor into a bar against assertion of a claim against a different party, under a different theory, in the future. To be conclusive in a subsequent action, an issue of fact or law must actually be litigated and *determined,* see Restatement (Second) of Judgments § 27, and no determination of the relevant issue took place in *Day I.*

The motion judge in the present case relied on issue preclusion as the basis for dismissal of the plaintiff's tortious interference and G. L. c. 93A claims. Kerkorian argues that dismissal could have been predicated on claim preclusion as well. "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Heacock* v. *Heacock,* 402 Mass. at 23. It is a requirement that all legal theories supporting a claim be presented when the opportunity is available, not preserved for presentation through piecemeal litigation. See *Bagley* v. *Moxley,* 407 Mass. 633, 638 (1990). "The doctrine is a ramification of the policy considerations that underlie the rule against splitting a cause of action." *Salem* v. *Massachusetts Commn. Against Discrimination,* 44 Mass. App. Ct. at 638, quoting from *Heacock* v. *Heacock, supra* at 24.

Whether expressed as claim preclusion or as a rule against claim splitting, the doctrine presupposes that a claimant has had an opportunity to assert his claims against a given defendant, and either has failed to assert those claims or has asserted the claims and had them adjudicated adversely. See Restatement (Second) of Judgments § 24(1) ("When a valid and final judg-

ment . . . extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies *against the defendant* with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose" [emphasis supplied]). In this case, it is difficult to say that the plaintiff had the kind of opportunity to assert claims against Kerkorian in *Day I* that should reasonably lead to a bar against pursuing those claims on the ground of claim preclusion.

Kerkorian was not a party in *Day I*. That action was instituted by the insurer, so the counterclaims asserted by the present plaintiff (then a defendant) could seek relief solely from the insurer. We do not believe that the doctrine of claim preclusion requires that a party defendant implead a third party or suffer preclusion with respect to claims that he otherwise has against that third party. This is nothing more than a form of mandatory joinder, and we are unaware of such a requirement within either the canons of res judicata or the rules of procedure. We observe that "[a] judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." Restatement (Second) of Judgments § 49. If claims against a nonparty are not barred when the nonparty is a co-obligor of a party against whom an action has been brought, we fail to see how the claims against the nonparty in *Day I* can be barred merely by virtue of the failure to commence third-party proceedings against him.

Kerkorian suggests that claim preclusion may be applied because the insurer and its agent Kerkorian were privies, so that the status of the insurer as a party in *Day I* was sufficient to enable the adjudication of claims against Kerkorian. Persons may be privies with parties for some purposes, but not others. Kerkorian as the insurer's agent was its privy insofar as Kerkorian's acts bound the insurer with respect to the latter's obligations under the 1995 policy. It does not follow that they were privies with respect to the litigation of claims, such as those for tortious interference and violation of G. L. c. 93A, directed specifically against Kerkorian and for which the insurer would have no liability under a theory of respondeat superior. That the actions of the agent had a bearing on the determination in *Day I*

of the insurer's obligations under its contract of insurance does not mean that the independent question whether Kerkorian interfered with the insurance contract has been, or could have been, adjudicated.

3. *Conclusion.* We conclude that the plaintiff is not barred by the doctrine of claim preclusion with respect to claims against a nonparty as a result of *Day I,* and that nothing decided in *Day I* prevents the assertion of those claims in *Day II* on the basis of issue preclusion. The judgment is reversed.

*So ordered.*