NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1335                                      Appeals Court

DOROTHY A. LEIGHTON, personal representative,[1]  vs.
BENGT HALLSTROM.


No. 17-P-1335.

Plymouth.     September 7, 2018. - November 7, 2018.

Present:  Green, C.J., Milkey, & Singh, JJ.


Devise and Legacy, Intestacy.  Executor and Administrator,
      Fiduciary duty.



      Petition for adjudication of intestacy filed in the
Plymouth Division of the Probate and Family Court Department on
April 29, 2015.

      A motion to strike an objection to a petition for an order
of complete settlement was heard by Patrick W. Stanton, J.


      Mark A. Tanner for the defendant.
      Stephen B. Rosales (Samantha Clark also present) for the
plaintiff.


      MILKEY, J.  On February 7, 2015, Bridgewater resident

Robert H. Olson died without leaving any known will.  He had no

surviving parents, spouse, or children.  The plaintiff, Dorothy

_____

      [1] Of the estate of Robert H. Olson.

A. Leighton, a first cousin to Olson on his father's side, stepped forward to claim his estate on behalf of herself and two similarly situated relatives.  During the resulting intestacy proceedings, in which Leighton was appointed personal representative of the estate, the defendant, Bengt Hallstrom presented himself as a first cousin on Olson's mother's side and sought a proportionate share.  However, the Probate and Family Court judge ultimately concluded that Hallstrom's efforts were tardy.  Ruling that Hallstrom's claim was precluded as a matter of law, the judge struck Hallstrom's objection to Leighton's petition for order of complete settlement.  A magistrate then entered a final decree settling Olson's estate without Hallstrom receiving any share.  Because we agree with Hallstrom that the judge erred in various respects, we vacate the order allowing Leighton's motion to strike and the final decree settling the estate, and remand for further proceedings.

Background.[2]  1.  Leighton's petition.  Leighton initiated these proceedings on April 29, 2015, by filing a petition for formal adjudication of intestacy.  See G. L. c. 190B, § 3-402. That petition also requested that Leighton be appointed the

_____

[2] The key facts necessary to resolve this appeal are uncontested.

personal representative[3] of Olson's estate.[4]  Leighton's petition listed herself and two other first cousins as "all known heirs on [Olson's] predeceased father's side."  It further stated: "It is unknown if any heirs exist on [Olson's] predeceased mother's side and, if so, the degree of kindred and location of such heirs."  By checking a box on the court's preprinted form, Leighton requested that the court "[f]ormally determine [Olson] died without a [w]ill and determine heirs."

2.  <u>Hallstrom comes forward</u>.  By order dated July 6, 2015, a guardian ad litem (GAL) was appointed to represent Olson's unascertained heirs with respect to Leighton's pending petition. Before the GAL filed his report, Hallstrom, a resident of Uddevalla, Sweden, stepped forward and identified himself to Leighton as an interested person.  Specifically, Hallstrom's counsel sent Leighton's counsel a letter that included a genealogical chart purporting to show that Hallstrom was the son

---

[3] Under the Massachusetts Uniform Probate Code, "[p]ersonal representative" is defined broadly to encompass a number of roles more commonly denoted in the case law, including, as examples, "executor" and "administrator."  See G. L. c. 190B, § 1-201 (37).

[4] In addition, Leighton's petition, together with an accompanying motion, requested that she immediately be appointed as special personal representative.  That motion was allowed on May 18, 2015.  Although the relevant papers were not included in the record appendix, what is before us suggests that Leighton's appointment as special representative was necessitated by the need for someone to manage real estate that Olson had owned. See G. L. c. 190B, § 3-614.

of Olson's mother's brother (and hence, a first cousin). Using a preprinted form, Hallstrom filed a notice of appearance, which was docketed by the court. On that form, Hallstrom checked the box that signified that his appearance "is NOT an objection."[5] His counsel explained in a contemporaneous letter to Leighton's counsel, "I have not listed it as an objection since it is my understanding by [sic] doing so will cause a contest in this matter."

3. The GAL's report. After having discussed the matter with both Leighton and Hallstrom, and after having reviewed the docket and certain other relevant documents, the GAL issued his report, which was docketed on July 24, 2015. That report confirmed that Olson had died intestate and urged that a personal representative be appointed "to take control of [Olson's] real estate and prevent waste as well as marshaling all assets of personal property." The GAL assented to that appointment after noting that Hallstrom -- the only additional claimant who had surfaced -- had not objected. With respect to the key issue of determining heirs, the GAL suggested deferring that issue to the future, stating, "The issue of determining

---

[5] The form included a different box, left unchecked, that would have signified that what was being filed "IS an objection."

heirs can be addressed during the course of handling the estate."

4. <u>The July 2015 decree</u>. On July 27, 2015 -- that is, three days after the GAL report was docketed -- a magistrate acted on Leighton's pending petition by issuing what is styled as a "decree and order on petition for formal adjudication." That decree (the July 2015 decree) was issued on another preprinted form. Through the magistrate's checking the appropriate boxes, the July 2015 decree ruled that Olson had died intestate, and it appointed Leighton as personal representative of his estate. With respect to the identity of Olson's heirs, the magistrate left blank the spaces provided on the form for listing individual heirs and instead checked the box that indicated that the heirs were "as stated in the [p]etition."

5. <u>Post-July 2015 proceedings</u>. In November of 2015, Leighton filed a separate petition seeking court approval to sell Olson's real estate. That petition specifically listed Hallstrom as a purported heir who would be due a one-quarter share of the estate "pending verification of lineage." It also included a footnote underscoring that Leighton was not conceding that Hallstrom was a first cousin but instead still was awaiting proof of that. Leighton simultaneously sent a letter to Hallstrom's counsel seeking his assent to the sale of the

property.  She explained:  "Since [Hallstrom] is a purported heir of the Estate, we are requesting his signature on the enclosed Petition for Sale of Real Estate to expedite the process of obtaining a License to Sell."  The letter made it clear that Leighton was not accepting the proof that Hallstrom had supplied to date:  "Please be advised that unless and until your client furnishes acceptable proof of lineage to this office, the Estate will not recognize Bengt Hallstrom as an heir of the Estate of Robert H. Olson."  Hallstrom's counsel responded by providing Leighton the requested assent, as well as by sending her various genealogical charts purporting to document Hallstrom's status as a first cousin.  His letter closed by stating, "I trust that this documentation will establish my client as an heir.  Please let me know if you have any questions or need any further documentation."

By letter dated March 4, 2016, Leighton informed Hallstrom that she still did not intend to recognize him as an heir because she found his proof insufficient.  That letter also included language that could be taken to suggest, for the first time, that the court already had determined that the heirs were limited to the three first cousins on Olson's father's side.[6]  At

---

[6] The relevant passage from the letter is as follows:

"The Court has already issued a decree and order that Robert H. Olson died intestate, that Dorothy Leighton be

the same time, the letter continued to indicate that Leighton would recognize Hallstrom as an heir if "the Court makes a formal determination of [his] status as an actual heir of the Estate." Finally, even though nothing in the record suggests that Leighton ever had taken any affirmative steps of her own to track down whether there were heirs on Olson's mother's side, her March 2016 letter suggested that the onus was on Hallstrom "to seek relief in the Probate Court in any way you deem appropriate."

By letter dated May 18, 2016, Hallstrom sent Leighton an additional packet of genealogical records purporting to document

---

appointed Personal Representative and that the heirs are as stated in the petition, specifically Dorothy A. Leighton, Paul Carson and Nancy Broadhead. A copy of the Court's decree and order is enclosed for your information. The Estate will proceed in accordance with that decree and order.

"Although you filed an appearance with the Plymouth Probate Court, your appearance did not include an objection to any of the numerous Court proceedings the Estate has undertaken to date in administering the Estate. Your filed appearance will continue to entitle you to notice of the Estate's probate proceedings.

"If you disagree with our position, your client is free to seek relief in the Probate Court in any way you deem appropriate and the Estate will respond accordingly to any such action. Until then, please be advised that until the Court makes a formal determination of Bengt Hallstrom's status as an actual heir of the Estate, the Estate will not recognize or treat him as one and will proceed accordingly."

his status as a first cousin.[7]  His letter closed by stating:  "I believe this is the requested information to hopefully establish conclusively [Hallstrom's] status as an heir, but if there is any further information or verification that is necessary, please let me know."[8]

In September of 2016, Hallstrom wrote to Leighton requesting an update.  It is not clear if any direct response was provided.  In any event, some two months later, in early December, Leighton filed a petition for order of complete settlement that sought approval to wind up the estate by distributing it in three equal shares to her and the other two first cousins on Olson's father's side.  Hallstrom docketed an objection on January 30, 2017, and followed up about one month later by submitting documentation purporting to show that he too was a first cousin.  That documentation included an executed "affidavit of research" from a London-based genealogist, together with certified birth, baptism, death, and marriage records from the Swedish region of Värmland, and the cities of

---

[7] The letter indicates that it was sent as a follow up to a telephone conversation that the two counsel had had.  The record does not reveal the contents of that conversation.

[8] The package that Hallstrom sent included an unsigned affidavit, apparently from the genealogical researcher whom Hallstrom had hired.  In his cover letter, Hallstrom promised to send a signed affidavit as soon as possible.  The record indicates that the signed and notarized affidavit was supplied in July of 2016.

Uppsala and Gothenburg.  Leighton moved to strike Hallstrom's objection, arguing that the July 2015 decree already had determined that the heirs did not include Hallstrom and that therefore, on various procedural and jurisdictional grounds, it now was too late for Hallstrom to pursue his claim.[9]

6.  The judge's rulings.  The judge agreed with several of Leighton's arguments.[10]  Relying on language from the Massachusetts Uniform Probate Code (MUPC), the judge reasoned that the July 2015 decree issued by the magistrate must be deemed "final" unless Hallstrom timely filed either an appeal of that decree or a motion to vacate it (neither of which he did).  See G. L. c. 190B, § 3-412.  He went on to point out that even if Hallstrom had filed a timely motion to vacate the July 2015 decree, Hallstrom could not have met the other statutory criteria necessary to allow such a motion to be granted.

---

[9] Leighton also sought to question Hallstrom's claimed kinship on the facts.  For example, she sought to poke holes in the archival records, e.g., by focusing on whether the first name of Olson's mother -- identified alternatively as "Valborg" and "Walborg" -- properly began with a "W" or a "V."  The judge did not address Leighton's factual claims at this stage in the proceedings, and neither do we.  See G. L. c. 190B, § 1-401 (affidavits of objection are reviewed only to determine if they meet statutory requirements); O'Rourke v. Hunter, 446 Mass. 814, 818 (2006) (in reviewing affidavit of objection, factual inferences to be drawn in favor of the objector).

[10] The judge rejected Leighton's argument that the doctrine of res judicata barred Hallstrom from claiming that he was an heir.  Leighton no longer presses this argument.

Hallstrom separately argued that Leighton violated fiduciary responsibilities that she owed to him "by failing to thoroughly investigate the possibility that he was an [h]eir." The judge rejected that argument based principally on the timing of Leighton's appointment as personal representative. According to him, Leighton had no fiduciary duties to Hallstrom until she was appointed pursuant to the July 2015 decree. See G. L. c. 190B, § 3-701 ("The duties and powers of a personal representative commence upon appointment"). Because the judge viewed the July 2015 decree as simultaneously appointing Leighton as personal representative and determining the heirs, the judge reasoned that "at the time her fiduciary duties commenced, the Court's determination of [h]eirs had already become final."[11]

Having concluded that Hallstrom's claim to be an heir was precluded as a matter of law, the judge allowed Leighton's motion to strike Hallstrom's objection to her petition for a complete settlement of the estate. A final decree then issued, settling the estate in the manner Leighton had requested.

---

[11] The judge also rejected arguments that he could and should modify the July 2015 decree pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974). Hallstrom has not renewed his rule 60 (b) arguments on appeal, and we therefore have no occasion to consider them.

Discussion.  As the judge well explained in his memorandum of decision, the MUPC contains strict procedural constraints to which practitioners must pay careful attention.  As relevant here, once an order has issued that constitutes a formal determination of the heirs of an intestate estate, then unless that order has been appealed from or been the subject of a timely motion to vacate, the order "is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant . . . to the determination of heirs."  G. L. c. 190B, § 3-412.  Moreover, under the statute, a motion to vacate a formal determination of heirs can be brought in only limited circumstances that would not have applied here.  See id.[12]  Finally, a motion to vacate must be brought within certain deadlines, including in any event by "[t]welve months after the entry of the order sought to be vacated."  G. L. c. 190B,

_____

[12] As pertinent here, the MUPC provides:

"[T]he determination of heirs of the decedent may be reconsidered if it is shown that [one] or more persons were omitted from the determination and it is also shown that the persons were unaware of their relationship to the decedent, were unaware of the death or were given no notice of any proceeding concerning the estate, except by publication."

G. L. c. 190B, § 3-412 (2).

§ 3-412 (3) (iii).  Practitioners ignore such procedural land mines at their peril.

However, the key question before us is not whether the July 2015 decree became final (the issue on which the judge focused), but what that decree means.  As noted, the July 2015 decree did not purport to set forth an exclusive listing of heirs; it simply included a checked box indicating that the heirs would be "as stated in [Leighton's] [p]etition."  That petition forthrightly had acknowledged that there could be heirs on Olson's mother's side; it was just "unknown" to Leighton whether heirs existed "and, if so, the degree of kindred and location of such heirs."  Further, by the time Leighton's petition was considered, Hallstrom had already come forward as a claimant and Leighton understood him as such.  Moreover, the GAL that had been appointed to represent unidentified heirs also recognized that Hallstrom was a claimant (despite Hallstrom's not having filed a formal objection),[13] and reported this to the court.  In

---

[13] As Hallstrom now acknowledges, he is not blameless in how this all unfolded.  It appears that his failure to categorize his notice of appearance as a formal objection, see G. L. c. 190B, § 1-401 (d), is what led the magistrate to consider the determination of heirs as an uncontested issue on which he could rule.  See G. L. c. 190B, § 1-401 (g) (authorizing magistrate to issue appropriate orders "[i]f a proceeding is unopposed").  See also E.M. Moriarty, R.A. Nesi, L.A. Roberts, T.P. Jalkut, C.G. Mehne, & E.J. Patsos, MUPC Estate Administration Procedural Guide § 4.15.4 (2d ed. 2016) ("A magistrate has no authority to hear a contested matter").  In hindsight, it is plain that Hallstrom should have tailored his initial filing to highlight

the GAL's view, the identity of the heirs would be resolved at a later point in the proceedings. In these specific circumstances, we do not interpret the magistrate's having checked the box on the preprinted form that the heirs would be "as stated in the [p]etition" as constituting a formal determination that the heirs would include only the three individuals specifically referenced in the petition, and not Hallstrom. Rather, Hallstrom's kinship status was left unresolved by the July 2015 decree and never has been adjudicated. Accordingly, Hallstrom was not precluded from raising it in opposition to Leighton's petition for a final settlement of the estate.[14] Cf. Day v. Kerkorian, 61 Mass. App.

---

that although he was not opposing the determination of intestacy or Leighton's appointment as personal representative, he was lodging an objection to Leighton's petition to the extent that it could be taken to state that he was not an heir. Even with the current bare-bones preprinted Probate and Family Court forms, he could have accomplished this through simple means, e.g., the creative deployment of asterisks. We urge the Probate and Family Court to revisit its forms to consider whether they should provide filers more options than simply identifying that a notice of appearance as a whole "is" or "is not" an objection, particularly where some of the court's forms (including petitions for formal adjudication, at issue here) allow petitioners to make multiple requests to the court at one time.

[14] Viewed from one perspective, the magistrate's checking this box was simply an error: the magistrate should not have signaled that the heirs were "as stated in the [p]etition" when the petition itself did not purport to set forth an exclusive listing of heirs, and all concerned were aware that Hallstrom was seeking a share. We have long recognized the principle that when a court error has created a "procedural tangle" that unfairly threatens to preclude a party from pursuing a claim, we

Ct. 804, 809 (2004), quoting <u>Kirker</u> v. <u>Board of Appeals of</u>
<u>Raynham</u>, 33 Mass. App. Ct. 111, 113 (1992) ("Issue preclusion is
not available where there is 'ambiguity concerning the issues,
the basis of decision, and what was deliberately left open by
the judge'").[15]

One additional observation bears noting.  Because we rule
in Hallstrom's favor based on the meaning of the July 2015
decree, we need not resolve his alternative contention that
Leighton violated fiduciary duties that she owed to him.
Nevertheless, we note our disagreement with the judge's

_____

generally rule in favor of that party "where this result is
technically possible and does not work unfair prejudice to other
parties."  <u>Krupp</u> v. <u>Gulf Oil Corp</u>., 29 Mass. App. Ct. 116, 121
(1990).  See <u>id</u>. at 121 n.6 (appellate rights not lost where
lower court's "promiscuous use of the title, 'Judgment' . . .
[had left] parties in confusion as to when an appeal is called
for to save their rights to appellate review").

[15] Notably, our interpretation of the July 2015 decree is
consistent with how the parties themselves interpreted it at the
time.  As the above factual recitation makes clear, both sides
considered Hallstrom's status as an heir to remain an open
question long after the July 2015 decree entered.  Even
Leighton's March 2016 letter -- the first documented occasion in
which she hinted that her position on the meaning of the July
2015 decree was evolving -- treated the question of Hallstrom's
status as an issue that still had not finally been adjudicated.
Although the document being interpreted here is a court order,
not a negotiated contract, the parties' contemporaneous
understanding of that order revealed by their actions sheds some
light on how a reasonable person would interpret its language.
Cf. <u>T.F.</u> v. <u>B.L.</u>, 442 Mass. 522, 525 (2004), quoting <u>Martino</u> v.
<u>First Nat'l Bank</u>, 361 Mass. 325, 332 (1972) ("There is no surer
way to find out what parties meant, than to see what they have
done").

assessment that any such fiduciary duties were so evanescent as to vanish as soon as they were created. After the July 2015 decree was entered -- and despite her obvious conflict of interest -- Leighton continued to hold herself out as the frontline adjudicator of whether Hallstrom's proof of kinship was sufficient. Whatever else can be said about the extent of Leighton's fiduciary responsibilities to Hallstrom at that point, she had a duty not to mislead him about how his claim was to be resolved. Moreover, even though Hallstrom may carry the burden at trial of proving that he is entitled to a share of Olson's estate, see Hopkins v. Hopkins, 287 Mass. 542, 544 (1934), this does not absolve Leighton of seeing that a fair process is utilized to identify heirs.[16] See Doe v. Roe, 19 Mass. App. Ct. 270, 272-273 (1985), quoting DeSautels, petitioner, 1 Mass. App. Ct. 787, 791 (1974) ("it is a 'basic

---

[16] Had Hallstrom pursued the more prudent course of filing a limited objection to Leighton's original petition, see note 13, supra, then under the terms of the MUPC, Hallstrom also shortly thereafter should have filed an affidavit of objection laying out the specific grounds of his objection. See G. L. c. 190B, § 1-401 (d), (e). In the absence of such an affidavit, Leighton could have moved to dismiss the objection, in which case Hallstrom could have argued that Leighton's request that heirs be determined was premature on the ground that she had not done any due diligence to track down heirs on the mother's side, or that, in any event, an extension of time to submit an affidavit of objection was proper under the particular circumstances presented. It would be inappropriate to speculate how the judge would have resolved such a contest.

responsibility of the probate judge and of the administrator' to identify a decedent's heirs and assure that his estate is properly distributed among them").[17]

Conclusion.  Because Hallstrom's status as an heir has never been adjudicated, we vacate the order allowing Leighton's motion to strike Hallstrom's objection to Leighton's petition for order of complete settlement and the final decree settling the estate.  We remand this case to the Probate and Family Court for further proceedings consistent with this opinion.

So ordered.

---

[17] We recognize that the cases just cited predate the MUPC. See St. 2008, c. 521, § 9 (enacted on January 15, 2009, effective on March 31, 2012).  However, by the express terms of the MUPC, such case law survives except to the extent the statute displaces it.  See G. L. c. 190B, § 1-103.  See generally Kerins v. Lima, 425 Mass. 108, 110 (1997), quoting Commercial Wharf E. Condominium Ass'n v. Waterfront Parking Corp., 407 Mass. 123, 129 (1990), S.C., 412 Mass. 309 (1992) ("a court 'will not presume that the Legislature intended . . . a radical change in the common law without a clear expression of such intent'").