COMMERCIAL WHARF EAST CONDOMINIUM ASSOCIATION *vs.*
WATERFRONT PARKING CORP. & others.[1]

Suffolk. February 5, 1990. - March 26, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Real Property*, Condominium. *Easement. Condominiums*, Common area,
Master deed. *Fiduciary*.

Where a condominium developer, by an instrument recorded in the appro-
priate registry of deeds, reserved the rights to control vehicular parking
in the condominium's common area and to collect fees for the parking
of vehicles in that area and where the condominium master deed, re-
corded shortly afterward, recited that it was subject to these rights,
neither the developer's reservation of parking rights, nor its subsequent
grants of parking rights to the purchasers of adjacent land of the devel-
oper, violated provisions of G. L. c. 183A, §§ 10 (*b*) (1) and 5 (*c*),
securing the condominium's control of common areas and facilities
[128-131].
Language in an instrument recorded by a condominium developer was in-
terpreted as creating an easement appurtenant to and for the benefit of
the developer's retained land, permitting the developer to control vehic-
ular parking in the condominium's common area and to collect fees for
the parking of vehicles in that area. [131-134]
Where, as part of a plan for the development of several parcels of land,
including a parcel conveyed to a condominium, the developer reserved
the rights to control vehicular parking in the condominium's common
area and to collect fees for the parking of vehicles in that area, the

---

[1]The Watermark Co., Inc., as general partners of the Waterfront Park
Limited Partnership; Richard C. Kanter, Frederic S. Clayton, and
Salvatore J. Dignoti, trustees of Marina Nominee Trust and Wharf
Nominee Trust; Arthur B. Blackett, Charles W. Brown, III, Konrad
Gesner, and Bencion Moskow, trustees of Blue Water Trust; Charles W.
Brown, III, Konrad Gesner, and Bencion Moskow, trustees of Blue Water
Trust II; Arthur B. Blackett as general partner of East Commercial Wharf
Limited Partnership; and The Watermark-Atlantic Co. and USB Atlantic
Associates - 85, Inc., as general partners of One Hundred Atlantic Avenue
Limited Partnership.

developer thereafter could validly divide these rights and convey them piecemeal to the purchasers of the other parcels. [135-136]

Where a condominium developer, by an instrument recorded in the appropriate registry of deeds, reserved the rights to control vehicular parking in the condominium's common area and to collect fees for the parking of vehicles in that area, and where the condominium master deed, recorded shortly afterward, recited that it was subject to these rights, the parking arrangements, in the circumstances, were neither unfair to the owners of condominium units nor violative of any fiduciary duty of the developer. [136-137]

In a proceeding by a condominium association seeking an adjudication of the validity of vehicular parking rights retained by the condominium developer, a judge of the Land Court correctly concluded that the activities of the developer's successors in title had exceeded, in various respects, the scope of the retained rights. [138-139]

CIVIL ACTION commenced in the Land Court Department on July 16, 1985.

The case was heard by *Marilyn M. Sullivan*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph L. Kociubes* for the plaintiff.

*Camille F. Sarrouf* (*John B. Fleming* with him) for Waterfront Park Limited Partnership.

*Raymond J. Brassard* for One Hundred Atlantic Avenue Limited Partnership.

*Maynard M. Kirpalani* (*Gary D. Busek* with him) for Richard L. Kanter & others, trustees.

*Ralph A. Child & Stacy M. DeBroff*, for Arthur B. Blackett, submitted a brief.

*James J. Marcellino, Stuart T. Rossman & Anthony A. Bongiorno*, for Arthur B. Blackett & others, trustees, submitted a brief.

*Sheila S. Lewinger*, for Stewart Title Guaranty Company, amicus curiae, submitted a brief.

NOLAN, J. The plaintiff, Commercial Wharf East Condominium Association (Association), commenced this action in the Land Court seeking damages, relief in the nature of a writ of entry, declaratory relief, and injunctive relief. The

Association claimed that the right to manage the Association's parking area, which right was reserved by the defendant Blue Water Trust (developer) and subsequently conveyed to other defendants, was invalid. The defendants filed counterclaims and various cross claims. After a fifteen-day trial, a judge in the Land Court issued a thorough and detailed opinion. From the ensuing judgment, which upheld the validity of the reservation of rights and declared the rights of the parties in other respects, both sides appealed, and we allowed the plaintiff's application for direct appellate review.

The subject of this litigation is the land in Boston known as Commercial Wharf. In 1967, Commercial Wharf was purchased by the developer, which rehabilitated the granite block warehouse in the center of the wharf and, in 1978, decided to convert the building into condominium units. The developer originally intended to put only the granite building into condominium ownership and to retain the rest of the wharf in its own name, but learned, however, that such a plan would violate the floor-area requirements of the Boston Zoning Code. The developer resolved the zoning problem by deciding to grant a portion of the parking area, as well as the granite building, to the condominium.

Immediately prior to recording the condominium master deed, which covers the granite building and a portion of the wharf known as the "parking and driveway area," the developer recorded a document entitled "Commercial Wharf East Condominium —Declaration of Covenants and Easements" (Declaration). The Declaration purports to retain certain rights for the benefit of the retained land over the parking area which was deeded to the condominium. The retained rights include the right "to control and collect fees for the parking of vehicles in such area." The Declaration also provides that the owner of the retained land must maintain and manage the parking area and rent parking spaces to condominium unit owners at reasonable and competitive rates. The condominium master deed, recorded shortly after the Declaration, recites that it is subject to the easement pronouncement in the Declaration. The master deed also provides that

each unit owner has the right to rent one parking space, as stated in the Declaration.

From 1978 to 1984 the developer sold the condominium units in the granite building and managed the entire parking lot, including the parking and driveway area deeded to the Association. Then, in 1984, the developer began to sell its remaining interests on Commercial Wharf. First, in June, 1984, it conveyed lots 2 and 3 to the defendants Wharf Nominee Trust and Marina Nominee Trust (Nominee Trusts). The deeds to the Nominee Trusts include the right to irrevocable licenses to park ten cars in the parking and driveway area. In April, 1985, the developer conveyed lots 4, 5, and 6 and the right "to control and collect fees" in the parking and driveway area to the defendant Waterfront Park Limited Partnership (Waterfront). This deed grants the right to irrevocable licenses for sixteen parking spaces to Waterfront and retains the right to irrevocable licenses for fifty-two spaces in the developer, which then sold lot 1 and the right to twenty-six of its fifty-two irrevocable parking licenses to East Commercial Wharf Limited Partnership (East Commercial Wharf). Next, in February, 1986, the developer conveyed lot 8 to One Hundred Atlantic Avenue Limited Partnership (Atlantic). The deed to Atlantic includes the right to eleven parking licenses. The right to licenses for the remaining spaces of the fifty-two reserved by the developer is included in an option to purchase lot 7, granted to defendant Arthur B. Blackett.

Reference to the accompanying simplified map is helpful in visualizing the various interests on Commercial Wharf. The granite building and the area surrounding it entitled "parking and driveway" area are condominium property. Lots 2 and 3 are owned by the Nominee Trusts. Lots 4, 5, and 6, together with the right "to control" parking in the parking and driveway area, are owned by Waterfront. Lot 1 and the surrounding marinas are owned by East Commercial Wharf. Lot 7 is under option to Arthur B. Blackett and lot 8 is owned by Atlantic. Further facts appear in our discussion of the various issues raised in the cross appeals.

1. *Violation of G. L. c. 183A.* The Association's first con-
tention is that the arrangement relative to the parking and
driveway area violates G. L. c. 183A, §§ 5 (*c*) and 10 (*b*)
(1).

The purpose of G. L. c. 183A is "to clarify the legal status
of the condominium in light of its peculiar characteristics."
*Grace* v. *Brookline,* 379 Mass. 43, 52 (1979). It is essentially
an enabling statute. *Barclay* v. *DeVeau,* 384 Mass. 676, 682
(1981). Chapter 183A "provides planning flexibility to devel-
opers and unit owners," *id.,* and "[m]atters not specifically
addressed in the statute should be directed to the parties to
be worked out." *Tosney* v. *Chelmsford Village Condomin-
ium Ass'n,* 397 Mass. 683, 687 (1986). There are, however,
certain minimum requirements in c. 183A for establishing
condominiums which must be met. *Id.* at 686.

General Laws c. 183A, § 10 (*b*) (1) (1988 ed.), provides
that the condominium association "shall have" the right and
power "[t]o lease, manage, and otherwise deal with such
community and commercial facilities as may be provided for
in the master deed as being common areas and facilities."
Since the parking and driveway area is part of the common
area, the Association contends that the developer's retention
of control over that area cannot be reconciled with § 10 (*b*)
(1). The Association relies primarily on our decision in *Bar-
clay* v. *DeVeau, supra.* In *Barclay,* we dealt with a claim
that a developer's attempt to maintain control over a condo-
minium's board of trustees violated G. L. c. 183A, § 10 (*a*).
We determined that it is permissible for a developer to retain
such control in certain circumstances, at least for a reasona-
ble time. *Id. Barclay* is of little help in this case, however,
since here we are dealing with a different provision of § 10,
and we are not dealing with an attempt by the developer to
retain control over the Association. Rather, we are dealing
with the validity of a purported interest in property retained
by the developer over part of the common area.

We think it is clear that, by enacting G. L. c. 183A and
providing that land can be placed into the condominium form

of ownership, the Legislature did not intend to preclude the existence of nonownership interests in the condominium land.

The law of real property has long recognized the coexistence of possessory interests in land with limited nonownership interests in the same land. Nothing in c. 183A expressly precludes such nonownership interests. We will not presume that the Legislature intended such a radical change in the common law without a clear expression of such intent. See *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984).

In G. L. c. 183A, § 10 (*b*) (1), the Legislature has proclaimed that the Association, as the owner of the possessory interest in the condominium land, has the power to manage and control that land. But nothing prevents the simultaneous existence of a nonownership interest in the same land. As a practical matter, the existence of such an interest may interfere with the uses which the fee owner might otherwise make of his land. That is true, however, not only in the condominium context, but also in any case where one person owns an interest in the land of another. It is inherent in the nature of being a servient estate. See *Ampagoomian* v. *Atamian*, 323 Mass. 319, 322 (1948) (owner of servient estate cannot use his land in such a manner as is inconsistent with easement over that estate).

In this case the developer retained certain rights in the parking and driveway area. These rights were for the benefit of the rest of the land on Commercial Wharf. The developer duly recorded these interests. The Land Court judge found that the unit purchasers had constructive notice, and in many instances actual notice, of the scheme set out in the Declaration. The master deed recited that it was subject to the interests set out in the Declaration. We see nothing improper in the master deed's being subject to a prior, recorded interest in the condominium land. The Association still has the powers guaranteed to it by § 10 (*b*) (1), but it simply cannot utilize these powers in such a way as to interfere with the interests retained by the developer.

Similarly, the Association's argument under G. L. c. 183A, § 5 (*c*) (1988 ed.), fails also. Section 5 (*c*)

provides that the common area shall remain undivided and that any provision to the contrary is void. The Association contends that the developer's retention of rights in the parking and driveway area is a division of the common area and is therefore void.[2] In *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 401 Mass. 480, 484 (1988), we recognized that the language of § 5 (*c*) is clear and unambiguous. Section 5 (*c*) provides: "The common areas and facilities shall remain undivided and no unit owner or any other person shall bring any action for partition or division of any part thereof. . . . Any covenant or provision to the contrary shall be null and void." The clear meaning of this provision is that the ownership of the common areas shall not be divided; in other words, the common areas must remain in common ownership with each unit owner entitled to an undivided interest in the common areas. Nothing in § 5 (*c*) purports to prevent the existence of nonownership interests in the common areas. The fee interest remains undivided and in common ownership. That the master deed makes the fee interest subject to a prior interest is not violative of § 5 (*c*).[3]

A valid interest in a common area, to which the master deed is expressly subject, is not part of the common area. Section 1 of G. L. c. 183A makes it clear that certain land granted to a condominium, including the parking area, shall be considered part of the common area, but adds "except as otherwise provided or stipulated in the master deed." In this case the master deed makes it clear that the fee simple title to the parking and driveway area is in the Association. How-

[2]We were presented with a similar argument in *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 401 Mass. 480 (1988), although we did not reach the merits of the claim in that case.

[3]An analogue is illustrative. One can have an easement over property which is held in fee simple by others as tenants in common. See *Reed* v. *West*, 16 Gray 283, 284 (1860). It cannot be contended that such an easement invades and destroys the undivided ownership interests of the tenants in common. Similarly, the existence of a nonownership interest in the common area of the condominium does not destroy the undivided ownership interests of the condominium unit owners in the common area, which is required by G. L. c. 183A, § 5 (*c*).

ever, the master deed also makes that grant subject to the interests reserved in the Declaration. It follows that the interests retained by the developer in the Declaration are not "common areas." Since the interest retained by the developer never became part of the condominium common area, its retention does not constitute a division of the common area. Cf. *Beaconsfield Towne House Condominium Trust* v. *Zussman, supra* at 490 (O'Connor, J., dissenting) ("abundantly clear" that lease, to which condominium was subject, was not part of condominium trust property).

2. *Nature of the Retained Interest.*

a. "Deeds should be 'construed as to give effect to the intent of the parties, unless inconsistent with some law or repugnant to the terms of the grant.'" *Harrison* v. *Marcus,* 396 Mass. 424, 429 (1985), quoting *Bass River Sav. Bank* v. *Nickerson,* 303 Mass. 332, 334 (1939). The intent of the parties is gleaned from "the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time [the deed] was executed." *Bessey* v. *Ollman,* 242 Mass. 89, 91 (1922). The Declaration provides that the retained land shall benefit from and the condominium land shall be subject to "the non-exclusive right and easement to use the Condominium Land for vehicular and pedestrian access to the Retained Land for all purposes over the . . . 'Parking and Driveway' [area] . . . including the right . . . to control and collect fees for the parking of vehicles in such area . . . ." While a strict grammatical reading of the latter phraseology might mean that the owner of the retained land only has the right to control the fees he collects, we think that the intent was to retain the right to control the parking of vehicles on the land. It is clear that the developer intended, when it executed and recorded the Declaration and the master deed, to convey the fee interest in the parking and driveway area to the Association. The Land Court judge found that the developer also intended to create a "common scheme" of sorts, whereby the parking rights on the wharf would be managed for the benefit of all the parcels on the wharf. To effectuate its plan, the developer intended

to retain control over the parking activities in the parking and driveway area. Hence, it retained the right "to control and collect fees for the parking of vehicles."

The remainder of the Declaration is indicative of the developer's intent to retain the right to control all parking activities in the parking and driveway area. Paragraph 2 of the Declaration provides, in part, that "[t]he owners of the Retained Land at its [*sic*] own cost and expense shall maintain and manage the said Parking and Driveway area in the same condition as said land is in on the date hereof . . . ." The remainder of paragraph 2 lists specific obligations, traditionally associated with management, which were imposed on the owner of the retained land. This implies that the power to control and manage the parking area was meant to be retained. Paragraph 3 obliges the owners of the retained land to rent parking spaces to condominium unit owners at reasonable rates, again indicating that the Declaration envisaged a retention of management rights by the owners of the retained land. In context we think that there is little doubt that the power "to control and collect fees" includes the power to manage the parking activities in the parking and driveway area.

To the extent that there remains any doubt, we think that the actions of the parties clarify the arrangement. "[W]here the language of an instrument is doubtful, evidence of the practical construction by the parties is admissible to explain and remove the doubt." *Oldfield* v. *Smith,* 304 Mass. 590, 600 (1939). From 1978 until 1985, when it sold the management rights to Waterfront, the developer controlled all parking activities, set parking rates, and maintained the parking facilities. Neither the Association nor any of the unit owners objected to this control. This practical construction of the terms in the Declaration is in accord with our interpretation of that provision.

b. The parties are in disagreement over the nature of the interest retained in the Declaration. The Association's contention is that the interest is a lease or a management con-

tract. The defendants argue that the interest is an easement or a covenant.

In our view, the interest retained by the developer in the Declaration is an easement. The intent to create a property interest appurtenant to and for the benefit of the retained land is evident from the language of the Declaration. The title of the Declaration is the "Declaration of Covenants and Easements." Paragraph 1 grants the "non-exclusive right and easement to use the Condominium Land," including the right to control parking, to the "owners from time to time of the Retained Land." The language is thus indicative of the intent to create an appurtenant easement for the benefit of the retained land.

An easement is an interest in land which grants to one person the right to use or enjoy land owned by another. *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54, 57-58 (1938); 3 R.R. Powell, Real Property, par. 404[1], at 34-3 (1989 ed.). It is "a right, which one proprietor has to some profit, benefit, or beneficial use, out of, in, or over the estate of another proprietor." *Ritger* v. *Parker*, 8 Cush. 145, 147 (1851). In this case, the Declaration grants to the developer (and its successors) the right to use a portion of the land owned by the Association for a specific purpose. Indeed, as we have construed it, the Declaration allows the developer to control all parking activities in the parking and driveway area and to collect fees for parking thereon. But it cannot use the parking and driveway area for any other purpose or to any other end. The retained right is a right to use the land of another for a specific, limited purpose. We think the retained right falls within the domain of easement law. Compare *Baseball Publishing Co.*, *supra* (right to place sign on the side of a building is an easement). As recognized earlier, the existence of this easement undoubtedly interferes, as a practical matter, with the uses the Association could otherwise make of its property. But that characteristic is inherent in the nature of an easement. See *Owen* v. *Field*, 102 Mass. 90, 103 (1869) (effect of easement is to subject the servient owner's estate "to the burden of a restriction from doing upon it what he

otherwise could do, and an obligation to suffer others to use it in a manner which he might otherwise prevent"). The Association, of course, is entitled to use the land for all purposes not inconsistent with the easement. *Ampagoomian* v. *Atamian*, 323 Mass. 319, 322 (1948).[4]

The Association's contention that the retained interest is a lease or management contract has little merit. Certainly, the label placed upon the interest in the Declaration is not controlling. See *Baseball Publishing Co.*, *supra* at 56. It is also true that the right to operate a business upon the land of another could be a lease, a management contract, or a mere license. See *R.H. White Co.* v. *Jerome H. Remick & Co.*, 198 Mass. 41 (1908). Nevertheless, we think the intent to create a permanent interest in property is clear in this case. Moreover, the nature of the interest retained is characteristic of an easement and not a lease, which grants a right of exclusive possession, or a license, which merely excuses acts done by one on land in possession of another. See *Baseball Publishing Co.*, *supra* at 55.[5]

---

[4]The Land Court judge concluded that the retained interest was akin to a profit à prendre. A profit à prendre is similar to an easement in many ways, but encompasses the right "to take from the land of another either part of the soil . . . or part of its produce." *Gray* v. *Handy*, 349 Mass. 438, 441 (1965). In this case the profit which the developer and its successors are entitled to take from the parking and driveway area is artificial in nature, rather than the natural products associated with a profit à prendre. Hence we think the retained interest is not a profit à prendre.

[5]The Association argues that the retained right in this case is so extensive as to grant complete control over the parking and driveway area to the developer and to deprive the Association of any interest in the land. There may be instances where the extent of the privileges retained by a developer over land sold to others would be unreasonable or, where appropriate, held to be violative of the condominium act. That is not the case here, however. As discussed below, there are unique circumstances on Commercial Wharf, and there was no overreaching or fraud on the part of the developer. The fact that the developer (and now Waterfront) are entitled to be present on the Association's land for certain limited purposes does not make its control over that land complete. Many easements allow for the presence of the dominant estate owner or his instrumentalities on the servient estate.

3. *The Deeded Parking Rights.*

The Land Court judge held that the Declaration impliedly retained the right for the developer, as owner of the retained land, to park vehicles other than those of condominium unit owners on condominium land. We agree. As discussed above, the purpose of the Declaration was to retain control over parking for the benefit of all the parcels on the wharf. Absolutely essential to that purpose is the right to park noncondominium vehicles in the parking and driveway area. Moreover, the unit owners and the Association acquiesced in such a construction of the Declaration from 1978 until 1985.

The Land Court judge determined that the Declaration and the master deed envisaged a "common scheme" of "unified control of parking on the Wharf for the benefit of all owners without differentiation of the parking areas on Condominium or Retained Land." What was earlier said about the nature of the expressly reserved right to control parking supports this conclusion, as does the impliedly reserved right to park vehicles other than those of condominium unit owners on condominium land. This is not a "common scheme" in the sense that similar restrictions were imposed upon all the lots in a subdivision. See *Snow* v. *Van Dam*, 291 Mass. 477 (1935). Rather, this is a situation where the developer reserved certain rights so that it could maintain the limited parking facilities on the wharf for the benefit of all the parcels on the wharf.

When it began to sell the remaining parcels on the wharf the developer included in the deeds the rights to obtain licenses to park in the parking lots on the wharf, including in the parking and driveway area. These rights are referred to as "deeded parking rights." In our view, this was a division of the easement rights retained by the developer. Such a division of rights is valid. See *American Tel. & Tel. Co.* v. *McDonald*, 273 Mass. 324, 325-326 (1930) (upholding grant of part of easement). Indeed, since the retained rights were for the benefit of the land owners on the wharf, those rights were appurtenant to the land. There was nothing wrong with the

manner in which the developer divided those rights, according to the needs of each parcel.

Thus, the "deeded parking rights" are valid.

4. *Duration of the Rights.*

The Land Court judge expressed the view that the retained rights are subject to some durational limit, but reserved the question of what that time limit is. The Land Court judge explicitly noted that she would rule on this question after any appeals from the judgment. We construe the judge's action as a determination that judgment should enter on all claims other than those for declaratory relief on the issue of the duration of the retained interests. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974); *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 677-678 (1977). Hence, we do not consider this question to be before us.

5. *Overreaching and Breach of Fiduciary Duty.*

In *Barclay* v. *DeVeau*, 384 Mass. 676, 682 (1981), we suggested that a finding of overreaching or fraud might have invalidated the management agreement that we upheld in that case. The Association argues that the arrangement in this case, even if permissible, is invalid because it is the product of overreaching or a breach of fiduciary duty. We disagree.

The Association claims that both procedural and substantive aspects of the parking arrangement are unconscionable. See *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 291-295 (1980) (identifying both procedural and substantive aspects of inquiry into unconscionability under Uniform Commercial Code). The judge found that the unit owners had notice of the terms of the Declaration. Cf. *Tosney* v. *Chelmsford Village Condominium Ass'n*, 397 Mass. 683, 688 (1986) (agreement between developer and condominium association enforceable against unit owner where owner had ample notice of agreement). The judge also found that the design of the project was not concealed from the unit owners, that many of the unit owners had "considerable negotiating clout," and that there was no "bad faith" in the submission of the property to c. 183A. The principal point relied upon

by the Association is that, despite the notice of the terms of the Declaration, there was some uncertainty as to the extent of the right "to control" parking on the wharf. In the circumstances, we think this falls short of a showing that there was overreaching.

Substantively, we think the parking arrangement is fair and reasonable. The developer submitted the parking and driveway area to condominium ownership in order to comply with zoning requirements. It retained the right to control parking, however, because it had concerns regarding the allocation of the limited parking rights among the various parcels on the wharf. The Declaration and master deed exhibit an attempt by the developer to allocate various burdens and benefits among the parcels on the wharf. Thus, in addition to retaining the right to control parking and to collect fees, the Declaration provides that the owner of the retained land (the developer and its successors) must maintain the parking area. Maintenance includes, "without limitation, making necessary repairs and replacements thereto, clearing snow therefrom, providing for reasonable security at reasonable hours and obtaining and maintaining public liability insurance on said land with limits of not less than a single limit of $1,000,000 . . . said insurance to name the owners of the Condominium Land as additional insureds." The Declaration also provides that the owners of the retained land must assume the cost of maintaining the main horizontal sewer line serving the properties. Unit owners are guaranteed the right to rent parking spaces at "reasonable and competitive" rates. Accordingly, there was both a legitimate reason for the arrangement and a reasonable allocation of the burdens and benefits associated with it. See *Zapatha, supra* at 295.

We need not address the Association's contention that a developer of a condominium owes a fiduciary duty to the future residents. Even if we so held, we would find no breach of that duty in the circumstances presented here. For the reasons discussed above we think the developer acted in a fair and evenhanded manner.

### 6. *Overburdening of the Easement.*

The Land Court judge held that the developer's successors have overburdened the rights retained by it. The judge identified two distinct aspects of this overburdening. First, the judge found that the physical use of the parking and driveway area has changed to such a degree that the defendants are exceeding their privileges. Second, the judge held that the final source of power over the management of the parking area was the Association. Thus, the judge concluded that any changes in the operation had to be approved by the Association, but added that approval could not be withheld unreasonably.

When an easement is created, every right necessary for its enjoyment is included by implication. *Sullivan* v. *Donohoe,* 287 Mass. 265, 267 (1934). The extent of the easement is still regulated, however, by the intent of the parties as manifested by the language used in the grant. The Declaration explicitly provides that the dominant estate "shall maintain and manage the said Parking and Driveway area in the same condition as said land is on the date hereof." This is a clear limitation on the grant of the power to control and manage parking on the condominium's land. As discussed, the Declaration distributed a number of benefits and burdens. It thereby created a delicate balance between various parcels on the wharf. The express limitation on the extent of the retained rights is a guarantee that that delicate balance will be maintained. In our view, the wording of the Declaration prevents any *material* change in the use of the retained rights from the conditions existing in 1978. Because the extent of the easement is limited by the grant, we have no need to resort to the doctrine that an easement granted in general terms is available for all reasonable uses to which the dominant estate may thereafter be devoted. See *Marden* v. *Mallard Decoy Club, Inc.,* 361 Mass. 105, 107 (1972).

In order to make any *material* changes in the operation of the parking and driveway area, the defendants must consult with the Association. They have no authority under the retained rights to make material changes. Any activities be-

yond the privileges retained are not permissible without the license of the landowner, the Association.

The Land Court judge found that, when Waterfront took over management of the wharf's parking area from the developer in 1985, it instituted a number of changes. Prior to 1985, there had been a one-way flow of traffic with vehicles entering on the south side of the wharf and exiting through a separate gate on the north side. Waterfront discontinued the north gate and instituted a two-way flow of traffic through the south entrance. Prior to 1985, the lot attendant was uniformed and would make rounds for security purposes. After Waterfront took over, the attendant was no longer uniformed and did not make rounds. Waterfront installed a new guard booth, painted lines denoting straight parking spaces although the lot had previously been made up of angular parking spaces and, in some instances, had no painted lines, and changed the system for guest parking. The most significant change was that Waterfront granted licenses for forty parking spaces to Atlantic (eleven of these were "deeded" parking spaces). Atlantic instituted valet parking for Cherrystones Restaurant which is located on lot 8, a parcel owned by Atlantic.

The Land Court judge concluded that the changes after the developer's sale to Waterfront "departed materially" from the prior arrangement. In view of the strict requirement in the Declaration that parking be managed in the same condition "as said land is in on the date [of the Declaration]," we agree that the substantial changes instituted by Waterfront and Atlantic exceeded the privileges to which they were entitled under the easement retained by the developer, Blue Water Trust.

*7. Conclusion.*

The case is remanded to the Land Court, where the judgment is to be modified to conform to this opinion. As so modified, the judgment is affirmed.

*So ordered.*