Flynn v. Parker.

MICHAEL FLYNN & another[1] vs. MICHAEL PARKER[2] & others.[3]

No. 10-P-1640.

Suffolk. May 9, 2011. - August 30, 2011.

Present: KAFKER, GRAHAM, & MILKEY, JJ.

*Condominiums,* Common area, Master deed. *Real Property,* Condominium. *Practice, Civil,* Costs, Deposition.

In a civil action seeking, inter alia, a judgment declaring that the plaintiff owners of a residential condominium unit owned two walls that they wished to alter in their unit, a Superior Court judge properly granted summary judgment in favor of the defendant condominium association board, where the floor plans that were expressly incorporated into the master deed unambiguously identified the two walls as common elements owned by the association [288-290], and where the floor plans' specific and graphic depiction of those areas that constituted common elements owned by the association and those areas that comprised the residential unit owned by the plaintiffs provided such strong evidence of the declarant's original intent that it overcame any ambiguity in the text of the master deed [290-293].

This court remanded for further consideration an award of deposition costs pursuant to Mass.R.Civ.P. 54(e), where the judge made no express finding that the depositions at issue were reasonably necessary. [293]

CIVIL ACTION commenced in the Superior Court Department on September 25, 2008.

The case was heard by *Geraldine S. Hines,* J., on motions for summary judgment.

*John C. Foskett* for the plaintiffs.

*Sanford F. Remz* for the defendants.

MILKEY, J. The plaintiffs are the owners of unit 702 of the Flagship Wharf Condominium in Boston. They seek to renovate

[1]Carla DiMare, as the owners of unit 702 of Flagship Wharf Condominium.

[2]Individually and as a member of the Flagship Wharf Condominium Association board of managers.

[3]Mark Stevens, individually and as a member of the Flagship Wharf Condominium Association board of managers; Doug Thayer, individually and as owner of Thayer & Associates, Inc.; and the Flagship Wharf Condominium Association board of managers.

the kitchen area of their unit in a manner that involves the complete removal of one wall, and the partial removal of another. Pursuant to the condominium by-laws, they sought approval for their proposed changes from the governing body of the condominium association (association), defendant Flagship Wharf Condominium Association Board of Managers (board). The board indicated that it would grant approval, but only on the condition that the plaintiffs acknowledge that the association owned the two walls in question. Deeming that condition unacceptable, the plaintiffs filed a fourteen-count complaint against the board, two of its members, and a third individual involved in the management of the condominium. They sought a declaration that they owned the two walls, as well as damages based on a wide variety of claims ranging from infliction of emotional distress to civil conspiracy. The defendants counterclaimed seeking a declaration that they owned the walls based on what floor plans incorporated into the master deed depicted. On cross motions for summary judgment, a Superior Court judge ruled in the defendants' favor on the plaintiffs' claims, and in an amended judgment, the judge ruled in the defendants' favor on its counterclaim. We affirm, albeit on slightly different grounds than those relied upon by the motion judge.[4]

*Background.* In determining whether summary judgment was appropriately granted, we review the parties' submissions in the light most favorable to the losing party. See *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). Despite the volume of the summary judgment record, the key facts are largely undisputed.

*What the deeds say.* In February, 2007, the plaintiffs purchased their unit, together with undivided interests in the building's common elements, pursuant to a "condominium unit deed." The unit deed referenced the condominium master deed (as amended), with an appropriate citation to the registry of deeds. The unit deed also specified that the unit that the plaintiffs were purchasing "is shown on the floor plans [floor plans] filed simultaneously with the [m]aster [d]eed and the [u]nit [p]lan for said [u]nit [unit plan]," again with specific indicators of where such plans could be found. The amended master deed stated

---

[4]For the reasons set forth *infra*, we vacate an ancillary postjudgment order regarding the awarding of costs and remand that matter for further consideration.

that the phase of the condominium unit, of which the plaintiffs' unit was a part, "including the [u]nits and [c]ommon [e]lements located therein . . . is as shown on eleven (11) consecutively numbered plans recorded simultaneously herewith . . . ."

The master deed addressed what property the unit owners held individually, and what property they owned collectively with other unit owners as "common elements" (including two separate categories of common elements, "building common elements" and "residential common elements").[5] The common elements are defined to include, among other things, the land, "structural elements" of the building, exterior walls, common walls separating units, and walls separating units from "corridors, vestibules, and lobbies." They also include "central service equipment," such as plumbing and electrical wires, that serve more than the unit in which they lie. Finally, common elements are also defined to include additional areas and facilities shown on the condominium plans as building common elements, residential common elements, or, simply, "[c]ommon [e]lements."[6]

Specifically excluded from common elements is "any matter which, under [s]ection 5[.]A(I) hereof, is included within the description of the [r]esidential [u]nits."[7] Section 5.A(I) of the master deed in turn describes the residential units as being "shown on the [c]ondominium [p]lans." It also states that each residential unit:

"includes all non-structural walls within the boundaries of

[5]The subdivision of the common elements into these two categories is related to the fact that the condominium includes both commercial and residential units. The two categories are treated differently in a respect not relevant to the current dispute. Both parties have focused on whether the two walls are common elements at all, not into which category of common elements they may fall. We will do the same, touching on the distinction between the two categories only where it appears important to do so.

[6]Under the terms of the master deed, whether areas shown simply as "common elements" are deemed to be building common elements or residential common elements depends on whether they fit within the description of residential common elements. The current dispute does not require us to discern that line. See note 5, *supra*.

[7]Strictly speaking, this exclusion by its terms applies only to building common elements. However, in the definition of residential common elements, there are other suggestions that items intended to be part of the residential unit cannot be residential common elements.

such [u]nit, the heat pump unit within and exclusively serving such unit and all utility lines, pipes, wires, conduits, facilities and services, all vents, ducts, and flues and all building services and equipment to the extent the foregoing are located within and exclusively serve such [r]esidential [u]nit and are not located in any portion of the [c]ondominium contributing to the structure or support of the [b]uilding."

With respect to interior walls, the master deed defines the boundaries of residential units as follows:

"*Interior Building Walls Between Residential Units or Separating Residential Units from Residential or Building Common Elements*: The plane of the surface facing such [u]nit of the wall studs nearest the [r]esidential [u]nit or the plane of the surface of the metal furring on the concrete/masonry walls nearest the [r]esidential [u]nit."

*What the plans depict.* As shown on both the floor plan and the individual unit plan, the two disputed walls are thick interior walls that emanate from, and are perpendicular to, the central spine of the building.[8] On both plans, the two walls are depicted with solid black shading. That particular type of shading is also used for the exterior walls and for interior walls that separate the residential units from each other or from common areas such as hallway corridors outside the units. A legend that appears on the floor plan plainly indicates that the areas shown with this type of shading are "common elements." There are other, thinner interior walls depicted in white (with only the surfaces of the walls shown with black lines). The rooms themselves are also shown in white. The legend appearing on the floor plan indicates that it is the areas depicted in white that are part of the "residential unit."

*The plaintiffs' proposed renovation.* One of the walls separates the kitchen from the living room/dining room area (living area). The plaintiffs want to take down most of the upper portion of this wall (the kitchen/living area wall) in order to create what

[8]Although the precise thickness of the walls does not appear to be established in the record before us, the plans show them as being significantly thicker than other interior walls.

they refer to as a "pass through" between the rooms. This would apparently open up the kitchen not only to the living area but also to the "focal point of the unit," a wall of windows facing Boston Harbor and the Boston skyline.

The plaintiffs hired an expert who concluded that the two walls are not in fact structural (i.e., load bearing). The defendants did not counter that evidence in the summary judgment proceedings. In fact, one of the individual defendants acknowledged in his deposition that he has come to believe that the walls are not structural.

The kitchen/living area wall indisputably contains pipes and ducts, which the plaintiffs conceded below are themselves "common elements." The plaintiffs plan to leave the pipes and ducts in place, but to enclose them inside columns (in this manner, the upper part of the wall will in effect be replaced by two columns). The second wall separates the kitchen from a foyer. The plaintiffs want to replace this wall (the foyer wall) with glass French doors. As confirmed through the plaintiffs' having cut exploratory holes in the foyer wall, this wall does not currently contain any pipes, ducts, or other "central service equipment." The defendants maintain that even though the wall is currently empty, reserving it for future potential common use still serves an important purpose: reserving space for adding pipes, ducts, or other common elements in the future.[9]

Following lengthy and contentious discussions, the board indicated in writing that it would approve the plaintiffs' plans. However, the board was willing to do so only on the condition that the plaintiffs acknowledged that the association owned the walls and agreed to the board's reserving a right to have the owners reconstruct them at their expense for potential future common use.

*The course of the litigation.* After extensive discovery, the parties filed cross motions for summary judgment. Because the two walls were specifically shown as common elements on the

---

[9]The record reflects that the property manager raised this point in March, 2007, in what appears to be her first written response to the plaintiffs' renovations plans. The defendants have not attempted to produce collateral evidence that the need to reserve space was the specific reason why the foyer wall was shown as a common element.

floor plan, the judge ruled that the association, not the plaintiffs, owned them. She dismissed the plaintiffs' complaint in its entirety,[10] and she directed the entry of a judgment declaring that the association owned the two walls.[11]

*Discussion.* "Ownership of a condominium unit is a hybrid form of interest in real estate, entitling the owner to both exclusive ownership and possession of his unit, . . . and . . . an undivided interest [as tenant in common together with all the other unit owners] in the common areas . . . ." *Berish* v. *Bornstein,* 437 Mass. 252, 262 (2002), quoting from *Noble* v. *Murphy,* 34 Mass. App. Ct. 452, 455-456 (1993). Individual "condominium unit owners cede the management and control of the common areas to the organization of unit owners . . . ." *Id.* at 263. See *Lallo* v. *Szabo,* 75 Mass. App. Ct. 1, 4 (2009).

The governing statute, G. L. c. 183A, "contains a comprehensive scheme for defining and governing the common areas." *Id.* at 5. Toward that end, the statute requires that master deeds describe the "common areas and facilities" at the condominium. See G. L. c. 183A, § 8(e). The statute defines that term as including certain kinds of items, but the list is qualified by the language "except as otherwise provided or stipulated in the

---

[10]The defendants initially had sought summary judgment on all but two of the plaintiffs' claims. The two claims left out of that motion were based on allegations that the defendants had breached an agreement they had reached with the plaintiffs to settle their dispute (the contract-related claims). Later, the defendants filed a second summary judgment motion seeking dismissal of the entire complaint. In their opening appellate brief, the plaintiffs focused entirely on the ownership question. In a footnote in their reply brief, the plaintiffs appear to make a passing suggestion that even if the judge correctly decided the ownership issue, she should not have dismissed the contract-related claims. Having not raised this contention in their opening brief, and without supporting it with argument that rises to the level of appellate argument required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), the plaintiffs have waived it. *Travenol Labs., Inc.* v. *Zotal, Ltd.,* 394 Mass. 95, 97 (1985) (issue raised for first time in reply brief need not be considered).

[11]The judge initially directed the entry of a judgment dismissing the plaintiffs' first amended complaint in its entirety. After the defendants brought to her attention that she did not address the parties' respective requests for a declaration regarding the ownership issues, the judge issued a second judgment that, although labeled an "amended judgment," addressed only the declaratory relief issues. Thus, strictly speaking, there appear to be two final judgments (contrary to proper procedures, see *Jones* v. *Boykan,* 74 Mass. App. Ct. 213, 218 n.9 [2009]). The plaintiffs timely filed notices of appeal from each, which were docketed as a single appeal.

master deed." G. L. c. 183A, § 1, as amended through St. 1998, c. 242, § 3. Moreover, the list of enumerated items includes the generic category of "[s]uch community and commercial facilities as may be provided for in the deed as being owned in common."[12] G. L. c. 183A, § 1(7). Thus, the master deed itself provides "the rules of the game," *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442, 452 (1994), and the question we face is what did the master deed intend with regard to the division between individual and common property. In addressing that question, "[t]he intent of the parties is gleaned from 'the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time [the deed] was executed.' " *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 131 (1990), quoting from *Bessey* v. *Ollman*, 242 Mass. 89, 91 (1922).

Given that the two walls are plainly depicted as "common elements" on the floor plan, they fit within the description of that term in section 6.A(xii) of the master deed ("such additional common areas and facilities as may . . . be shown on the [c]ondominium [p]lans as [c]ommon [e]lements"). Notwithstanding this, the plaintiffs protest that the heavy black shading on the plans is ambiguous. In support of this argument, they submitted an expert affidavit stating that architects sometimes shade entire walls merely for "graphic clarity," and to avoid the "cluttering" that would be caused by showing individual pipes and similar elements inside the walls.[13] In this manner, the plaintiffs suggest that the black shading at most indicates that the walls might contain common elements (such as the pipes and ducts that the kitchen/living room wall in fact contains). But even if architects commonly shade entire walls to avoid clutter in their drafting, this would not change the fact that the legend on the floor plans expressly identifies those areas marked

[12]The list also includes "[a]ll other parts of the condominium necessary or convenient to its existence, maintenance and safety, or normally in common use." G. L. c. 183A, § 1(8).

[13]The plaintiffs highlight that their affiant worked for the architectural firm that actually prepared the plans. However, his averments go to architectural practices in general; he does not purport to state what the drafters of these plans specifically intended. We therefore need not decide how much, if any, value to place on such collateral proof of intent.

with black shading as common elements, and only those areas shown in white as making up the residential units.[14] We agree with the judge that the floor plans, which are expressly incorporated into the master deed and unit deed, unambiguously identify the two walls as "common elements."[15]

Our analysis is not done, however, because the walls nevertheless might fall within the language of section 6.A specifically excluding from the description of "building common elements . . . any matter which, under Section 5[.]A(I) hereof, is included within the description of the [r]esidential [u]nits." The plaintiffs argue that the "empty" foyer wall fits wholly within this exclusion, because it lies completely within their unit, it is not structural, and it contains no individual common elements such as pipes. They concede that the pipes and ducts inside of the kitchen/living area wall are common elements, but they argue that only that portion of the wall in the immediate vicinity of them is subject to common ownership.

A closer examination of the text of the master deed reveals the shortcomings in the plaintiffs' argument. The walls fit the textual description of a residential unit only if they lie "within the boundaries of such [u]nit." Since the kitchen/living area wall separates the unit from building common elements (the

---

[14]The plaintiffs also seek to place great significance on the fact that the drafters of the floor plan did not "certify" the boundaries of the common areas, and on the fact that c. 183A does not require them to do so. The premise of this argument is not free from doubt. That is because the plaintiffs' whole argument is that the walls are part of their unit and G. L. c. 183A, § 9, prior to its amendment in 2008 (see St. 2008, c. 13, § 1), did require that the "first deed of each unit" include plans that have affixed to them "the verified statement of a registered architect, registered professional engineer or registered land surveyor certifying that they . . . fully and accurately depict the layout of the unit . . . ." In any event, even apart from whether the certification at issue here addressed the limits of the unit, we discern no merit in the plaintiffs' "no certification" argument.

[15]To be sure, the individual unit plan does not include the legend. However, the unit deed references both the floor plans and the unit plans, and to the extent that the unit plan on its own is ambiguous, that ambiguity could have been resolved through the plaintiffs' looking at the floor plan. See *Tosney* v. *Chelmsford Village Condominium Assn*, 397 Mass. 683, 687-688 (1986) (unit owners have constructive notice of documents recorded with the master deed). One of the plaintiffs conceded below that although he examined portions of the master deed that were provided to him before purchasing the unit, he was never given (and apparently never sought to locate) the floor plans.

pipes and ducts inside of it), the boundaries of the unit by definition end at the plane of the wall, and the wall itself would not lie within such boundaries. The same would be true as to the foyer wall *if* that wall itself was intended as a common element. That means that the text of the master deed alone cannot resolve whether the foyer wall was intended to be held in common or by the unit owners,[16] and reliance on what the plans show is both appropriate and determinative. See *Reagan* v. *Brissey*, 446 Mass. 452, 458 (2006) ("A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed," quoting from *Jackson* v. *Knott*, 418 Mass. 704, 711 [1994]). Put differently, the floor plan's specific and graphic depiction of which areas constitute "common elements" and which areas make up the residential unit is such strong evidence of the declarant's original intent that it overcomes any ambiguity in the text.[17] Sometimes plans, like pictures, are worth a thousand words.

This interpretation is also consistent with the principle that master deeds are to be "interpreted in the light of the material circumstances and pertinent facts known to [the parties] at the time [the deed] was executed." *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. at 131, quoting from *Bessey* v. *Ollman*, 242 Mass. at 91. The plaintiffs made no attempt to demonstrate that when the master deed was executed, its drafters knew that the two walls were nonstructural, or that the foyer wall was "empty."[18] Instead, their claim of ownership is based on facts they uncovered in the present

---

[16]For similar reasons, the provision in a separate section of the master deed generally allowing unit owners — without board approval — to remove "interior non-bearing walls lying wholly within" their units is also not determinative.

[17]We do not rely on the principle that a plan incorporated into a master deed "prevails over the contrary language in the [m]aster [d]eed." For that proposition, the motion judge cited a number of lower court opinions and *Magoun* v. *Lapham*, 21 Pick. 135, 138 (1838). Putting aside the question whether *Magoun* itself stands for such a proposition, we rely on the floor plan here not because it somehow trumps contrary language in the master deed, but instead because it provides the most powerful evidence of what the text of that deed intended.

[18]To the contrary, one of the affidavits that the plaintiffs themselves submitted

day. In this manner, the plaintiffs suggest that the master deed intended that ownership of interior walls was to be determined based on whether the walls ultimately proved to be structural or whether they in fact housed common utilities. But such fluidity is at odds with the certainty required of documents that convey property interests. See *McHale* v. *Treworgy*, 325 Mass. 381, 385 (1950) (land conveyed in deed must be described with particularity). The master deed either intended that ownership of the walls be transferred to individual unit owners or it did not. If the intent of the parties that the walls be designated as common elements is plain (as we believe it is), then whether the walls ultimately proved to be structural or not would not affect the narrow question of ownership.[19]

We do not mean to suggest that the association has a strong present interest in what the plaintiffs do with the two walls. In fact, to the extent that an interior wall is nonstructural, does not contain common utilities, and can be seen only from within a unit, the association's interest in the walls would appear to be minimal. In this context, the board unsurprisingly indicated that it would approve the specific renovations that the plaintiffs proposed, as it has done with similar proposals in other units in the past.[20] Although the board reserved the right to force the plaintiffs to rebuild the walls, the plaintiffs have not demonstrated that

states that the black shading of the walls served to alert unit owners that the walls are a "likely location" of pipes, wires, and other common elements. In addition, the record reflects that in what appears to be her first written response to the plaintiffs' proposed plans in March of 2007, the building manager expressed concern — based on what had been found in other units — that the walls may contain common structural elements or common pipes and ducts.

[19]Put differently, if at the time the master deed was created, the drafters of the relevant documents misidentified these walls as common elements (e.g., because of a mistaken understanding that they were structural), the discovery of such an error would not suddenly mean that ownership to the walls had passed to individual unit owners.

[20]The plaintiffs highlight that the board had — prior to their application — allowed many other property owners to make similar renovations without insisting on the conditions relating to ownership of the walls. But there is no showing in the record before us that the ownership issues had come to the fore in those other proceedings, and those approvals do not by themselves resolve any underlying ownership issues there (the extent to which any such prior approvals may otherwise have affected the rights of the unit owners is not before us). While the board's change in policy may demonstrate a new appreciation for ownership questions that had previously been overlooked, it

the association's exercising that option is anything other than theoretical.

We conclude by addressing one ancillary dispute. Pursuant to Mass.R.Civ.P. 54(e), as amended, 382 Mass. 829 (1981), the defendants requested an award of approximately $14,000 in deposition costs. The judge allowed that award through a simple endorsement on the defendants' motion that "Costs shall be assessed." Discretionary deposition costs can be awarded only if the judge makes an express finding that the depositions at issue were "reasonably necessary." See *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 328 (1992).[21] Therefore, although we affirm the judgments, we vacate the order allowing the defendants' motion for costs and remand that motion for further consideration.

*So ordered.*

---

does not prove that the board's position on the underlying ownership issues has changed. Further, given the clarity provided by the floor plans, there is no cause to examine the past actions of the parties to clarify what was intended. Compare *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp., supra* at 133. Finally, we do not agree with the plaintiffs' assertion that the board's insistence on the new conditions going forward "raise[s] the invidious prospect of unreasonable and unfair discrimination by the [b]oard between similarly-situated unit owners."

[21]The defendants argue that the plaintiffs waived the reasonable necessity issue by not raising it below. We retrieved the plaintiffs' full opposition to the defendants' motion for costs on our own initiative. Although it is certainly true that the plaintiffs placed their primary focus elsewhere, they did argue that the defendants should not receive deposition costs on the grounds that the defendants had taken the position throughout the litigation that the issues could be resolved as matter of law. We therefore need not decide whether the requirement of a finding on reasonable necessity can be waived, although we do note that rule 54(e) on its face speaks in unqualified terms: "in no event shall costs be allowed unless the court finds the taking of the deposition was reasonably necessary."