NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-149                                            Appeals Court

SEWALL-MARSHAL CONDOMINIUM ASSOCIATION  vs.  131 SEWALL AVENUE
                    CONDOMINIUM ASSOCIATION.


No. 15-P-149.

Suffolk.     December 11, 2015. - March 1, 2016.

Present:  Cypher, Wolohojian, & Carhart, JJ.


Condominiums, Parking, Common area.  Real Property, Condominium,
    Registered land.  Contract, Validity.



    Civil action commenced in the Land Court Department on
March 1, 2007.

    The case was heard by Harry M. Grossman, J.


    Adam P. Whitney for the defendant.
    Edward S. Englander for the plaintiff.


    WOLOHOJIAN, J.  The parties are neighboring condominium

associations in the Coolidge Corner area of Brookline, where

parking is at a premium.  In 1978, when both condominiums were

controlled by the same developers, they entered into a written

agreement concerning the shared use and allocation of parking

spots on their respective properties.  Summarized in broad

strokes, they agreed that twenty percent of the spots would be reserved for residents of the plaintiff, the smaller of the two condominium associations (Sewall-Marshal), and eighty percent would be reserved for residents of the defendant, the larger one (131 Sewall), at no cost to either side. This arrangement continued for some twenty-eight years until 131 Sewall notified Sewall-Marshal that it would no longer abide by the agreement. This suit followed, seeking a declaration concerning the rights of the parties under the agreement. In essence, 131 Sewall contends that the agreement is unenforceable because it fails to comply with various provisions of G. L. c. 183A, the statute that enables the creation of condominiums, and because it is otherwise an unconscionable contract. After a bench trial, a judge of the Land Court sitting by designation in the Superior Court disagreed and entered a declaratory judgment in favor of Sewall-Marshal. We affirm.

Background. The judge's findings have not been shown to be clearly erroneous, and we summarize them here. The parties are condominium associations situated on abutting parcels of registered land in Brookline, near Coolidge Corner. Both associations were created in 1978, pursuant to the provisions of G. L. c. 183A, and their master deeds and by-laws were registered with the Norfolk registry district of the Land Court (registry district). With certain exceptions, the organizing

documents of both entities mirror each other, which is not surprising given that both properties were developed by the same owners, Roger and Matthew Stern.

Roger and Matthew, along with Jeffrey Stern, constituted the original boards of both condominiums and, pursuant to various enabling provisions in the by-laws,[1] they entered into the parking agreement in December, 1978, which they executed under seal. That agreement provides in relevant part:

> "So long as the 131 Sewall Avenue Condominium and the Sewall-Marshal Condominium shall be condominiums subject to Chapter 183A . . . Sewall-Marshal Condominium shall have the right, without cost, to the use of 20% of the total number of parking spaces located in both Condominiums, and 131 Sewall Avenue Condominium shall have the right, without cost, to the use of 80% of the total number of parking spaces located in both C[o]ndominiums.
>
> "The Boards of Managers, or their designees, of the two Condominiums shall meet during the month of December as necessary to agree upon the particular spaces which the Condominiums shall have the right to use . . . for the next year."

The agreement was never submitted to registration or otherwise placed in the record at the registry district. Some original unit owners were provided a copy of the agreement with the condominium documents. Although shortly after the agreement was

---

[1] The by-laws of both condominiums grant their respective boards the power to "lease[], licens[e] and otherwise allocat[e] parking spaces to the use of Unit Owners and others . . . ." The by-laws also expressly authorize each managing board to enter into an agreement with the other, whereby each "shall have the right to use parking spaces located within" the other's property.

entered into, the by-laws of Sewall-Marshal were amended to reflect that each unit owner would be allocated the use of a parking spot pursuant to the parking agreement, the by-laws of 131 Sewall were not.

There were sixty-two parking spaces between the two condominiums in 1978, and there are now sixty-eight. The majority of these spaces (approximately sixty) are part of 131 Sewall's common area, which includes a parking garage. The remaining spaces are part of Sewall-Marshal's common area, and are all outdoors. 131 Sewall has more units (fifty-one) than Sewall-Marshal (sixteen). At the time the condominiums were created, Brookline zoning ordinances required a minimum of one parking space per condominium unit.

It appears that the parties operated under the parking agreement without incident for close to thirty years. Then, on December 14, 2006, 131 Sewall announced to Sewall-Marshal that, as of February 14, 2007, it would "designate spaces to our own unit owners," and that "[a]s of February 15, 2007, any vehicle that is parked on [131 Sewall's] property without a written agreement for the same . . . will be towed at the vehicle owner's expense."

Discussion. 131 Sewall argues that the parking agreement is unenforceable because of various provisions of the Massachusetts condominium statute, G. L. c. 183A (Act), which

has been characterized as "essentially an enabling statute."[2] Tosney v. Chelmsford Village Condominium Assn., 397 Mass. 683, 686 (1986). Specifically, 131 Sewall contends that the parking agreement was an unrecorded easement and, therefore, ineffective ab initio, and, further, pointing to § 5(b) of the Act, that the parking agreement altered the undivided interests of the unit owners without their consent. Section 5(b), as in effect when the condominiums were formed, see St. 1963, c. 493, § 1, provides, in part, that "[t]he percentage of the undivided interest of each unit owner in the common areas . . . as expressed in the master deed shall not be altered without the consent of all unit owners, expressed in an amended master deed duly recorded." Both arguments fail if for no other reason than that they rest on incorrect premises: namely, that the parking agreement created an easement and that it affected the interests of the unit owners in the common areas.

An easement is a property interest appurtenant to land which allows "one proprietor . . . some profit, benefit, or beneficial use, out of, in, or over the estate of another proprietor." Commercial Wharf E. Condominium Assn. v.

---

[2] "Although [the statute] lays out certain minimum requirements for setting up condominiums, it also provides planning flexibility to developers and unit owners. Matters not specifically addressed in the statute should be directed to the parties to be worked out." Tosney v. Chelmsford Village Condominium Assn., 397 Mass. 683, 686-687 (1986) (quotation and citations omitted).

Waterfront Parking Corp., 407 Mass. 123, 133 (1990), quoting from Ritger v. Parker, 8 Cush. 145, 147 (1851). The parking agreement did not create an easement because it did not create a property interest appurtenant to land. Although the agreement sets the percentage of parking spaces each condominium has the right to use, it does not assign any particular space to one or the other condominium, or to any specific unit owner. There is no specific property benefited or burdened by the agreement; accordingly, the parking agreement did not create an easement.[3]

Nor did the parking agreement alter 131 Sewall's unit owners' percentage interest in the condominium's common areas such that unanimous consent was required under G. L. c. 183A, § 5(b). See Kaplan v. Boudreaux, 410 Mass. 435, 438 (1991). In Kaplan, a condominium's governing body executed an amendment to the condominium's by-laws that allowed one unit owner the exclusive use of an area that had previously been part of the condominium's common area. Id. at 441. The court held that because "other unit owners . . . lost all right to use part of the common property, and one unit owner gained the right to use it exclusively" the percentage interests in the condominium's common areas had been altered by the by-law amendment. Id. at

---

[3] 131 Sewall's argument that the parking agreement is void because it was not noted on the condominium's certificate of title fails for the same reason. The parking agreement does not create an encumbrance on the land, and therefore the provisions of G. L. c. 185, §§ 46-47, do not apply.

443. The court concluded that the amendment violated G. L. c. 183A, § 5(b), because unanimous consent by the affected unit owners had not been obtained before their interests in the common area were diminished. Id. at 443-444. By contrast, the parking agreement does not grant exclusive use of the condominium's common areas to any unit owner. Indeed, the agreement created a procedure whereby parking space assignments could be changed each year. No unit owner's interest in the common area diminished.

Rather than creating an easement or altering interests in the condominiums' common areas, the parking agreement was instead simply an exercise of the boards' powers under G. L. c. 183A, § 10(b)(1), inserted by St. 1963, c. 93, § 1, "[t]o lease, manage, and otherwise deal with . . . [the] common areas." See Commercial Wharf E. Condominium Assn., supra at 129 ("In G. L. c. 183A, § 10 [b] [1], the Legislature has proclaimed that the [condominium's governing body], as the owner of the possessory interest in the condominium land, has the power to manage and control that land"). Because the Massachusetts condominium statute does not circumscribe the means by which a board can exercise this power, the boards here were allowed to exercise it in whatever lawful way they saw fit. In this case, the developers did so by including in the by-laws the power to enter into a parking agreement with the abutting condominium,

and then signing a contract that pooled and allocated parking spaces located on the common areas. Cf. id. at 129 (prior recorded developer-created easement did not violate § 10[b][1]).

The parking agreement is a valid contract, that is, a bargained-for exchange supported by consideration.[4] See Kirkpatrick v. Boston Mut. Life Ins. Co., 393 Mass. 640, 652 (1985) (O'Connor, J., dissenting). Each side gave and received the opportunity to park in the other's parking spots. This opportunity was not a chimera; at least one unit in 131 Sewall has been assigned a parking spot at Sewall-Marshal for at least twenty years. See Newhall v. Paige, 10 Gray 366, 368 (1858) ("The law does not undertake to determine the adequacy of a consideration. . . . It is sufficient if the consideration be of some value, though slight, or of a nature which may enure to the benefit of the party making the promise"). It does not matter that the benefit may have been greater to the residents of Sewall-Marshal than to those of 131 Sewall.

131 Sewall argues that the parking agreement, if a contract, is an unconscionable one. "[U]nconscionability must be determined on a case by case basis, giving particular

---

[4] Because the contract here was supported by consideration, we need not (and do not) address Sewall-Marshal's contention that consideration was unnecessary because the contract was executed under seal. See generally Knott v. Racicot, 442 Mass. 314, 320-321 (2004) (discussing the continuing vitality of the sealed contract doctrine).

attention to whether, <u>at the time of the execution of the agreement</u>, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." <u>Miller</u> v. <u>Cotter</u>, 448 Mass. 671, 679-680 (2007) (quotation and citation omitted). As the same three people constituted the boards of both condominiums when the contract was entered into, the parking agreement could hardly result in unfair surprise to either side. That the agreement was adhered to for over twenty years without incident underscores the lack of surprise. Finally, when the agreement was executed, 131 Sewall had more parking spaces (sixty) than units (fifty-one).

131 Sewall urges us to consider provisions of the Uniform Common Interest Ownership Act (UCIOA) (2008)[5] and the Restatement (Third) of Property: Servitudes (2000) that it contends would allow it to terminate the parking agreement. Neither of these has been incorporated into our laws,[6] and we are not inclined to adopt them here. However, even were we to consider them, 131 Sewall would not benefit. Although the UCIOA and the Restatement contain provisions meant to deal with the "common

---

[5] We note that 131 Sewall cites provisions of the UCIOA as amended in 2008, notwithstanding that the letter purporting to revoke the parking agreement was sent in December, 2006.

[6] The Supreme Judicial Court has, however, referred to the UCIOA's predecessor statute, the Uniform Condominium Act, as providing "useful guidelines to a trial judge." <u>Barclay</u> v. <u>DeVeau</u>, 384 Mass. 676, 685 n.17 (1981).

problem" of a developer entering into "long-term contracts and leases with himself or with an affiliated entity" when he is in control of a condominium's board, UCIOA, 7(IB) U.L.A. § 3-105 comment 1, at 349 (Master ed. 2009); see Restatement (Third) of Property: Servitudes, supra at § 6.19, they do not apply here.

Under § 3-105 of the UCIOA, a condominium board (once it is controlled by the unit owners) may terminate contracts and leases made during the period of developer control within two years of the developer ceding control of the board to the unit owners, unless the contract is unconscionable, in which case the unit owner-controlled board may cancel at any time. UCIOA, supra at § 3-105(a), (b). See Restatement (Third) of Property: Servitudes, supra at § 6.19(3)(d). Here, the agreement was not unconscionable, as we have discussed, and 131 Sewall's board did not seek to terminate the agreement within two years of the developers transferring control of the board to the unit owners.

Section 6.19(3) of the Restatement (Third) of Property: Servitudes, supra, allows the unit owner-controlled board to terminate, at any time, "(b) any contract or lease between the [governing body] and the developer, or an affiliate of the developer; [and] (c) any lease of recreational or parking facilities." But the parking agreement is not a lease, and the agreement was between the two associations; accordingly this provision does not apply. We recognize that the boards were

both controlled by the same three men who were the developers of the properties.  However, there is no evidence of self-dealing or benefit to them; they appear to have gotten nothing out of the arrangement.

For these reasons, we conclude that the judge did not err in enforcing the parking agreement as a valid contract.

Judgment affirmed.

Postjudgment order dated December 31, 2014, affirmed.[7]

---

[7] The plaintiff purports to cross-appeal from the postjudgment order.  However, as no docketing fee was paid, we decline to consider the argument.  See Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 669-670 (2001), and cases cited.